[L. A. No. 17598. In Bank.—Aug. 29, 1941.]

HENRY J. O'DAY et al., v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Claud B. Andrews, John Leo Harris, W. Earl Shafer and Mosher & Shafer for Petitioner.

J. H. O'Connor, County Counsel, J. F. Moroney and Ernest Purdum, Deputies County Counsel, Frank J. Mackin, Faries & McDowell, David R. Faries, Bailie, Turner & Lake, Richard A. Turner, Salisbury, Robinson & Himrod, William B. Himrod, Freston & Files, Wayne R. Hackett and Charles A. Loring for Respondents.

EDMONDS, J.—Petitioners are two of the numerous claimants to the estate of Michael F. O'Dea, deceased. (*Estate of O'Dea*, 15 Cal. (2d) 637, 638 [104 Pac. (2d) 368]; *Marlow* v. *Superior Court*, 17 Cal. (2d) 393 [110 Pac. (2d) 11].) In a proceeding to determine heirship, which is pending and undecided, a judgment of dismissal was entered against them. They did not appeal but some five months after its entry they moved under § 473 of the Code of Civil Procedure that the judgment be vacated. Their motion was denied and the order was held to be nonappealable. (*Estate of O'Dea, supra.*) They now seek a writ of mandate commanding the probate court, notwithstanding the judgment of dismissal, to hear and determine their claims to heirship.

It appears that after the judgment of dismissal was rendered, the petitioners attempted to file a second claim to heirship. This claim is in exactly the same terms as the one which was dismissed by the judgment. The clerk, acting under an order of court, refused to file it. In the present proceeding the petitioners charge that there is no statutory au-

thority for a judgment of dismissal in an heirship proceeding, hence it is an act in excess of the jurisdiction of the court and does not bar their further participation in that proceeding.

■■■ As a further ground for the issuance of the writ, the petitioners contend that the court must permit them to file the second claim to heirship and present evidence thereon.

The procedure for determining heirship is contained in chapter XVII of the Probate Code, which includes §§ 1080–1082, based upon former § 1664 of the Code of Civil Procedure. These sections provide that when the time to file claims against an estate has expired but the estate is not in a condition to be closed, any person claiming to be an heir may file a petition setting forth his claim. The clerk shall set the matter for hearing and any person may appear and file a written statement setting forth his interest in the estate. No other pleadings are necessary. At the time appointed the court shall hear the petition and any objection to it, and shall determine who are the heirs, specifying their interests. When this decree becomes final, it is conclusive upon the matters determined.

■■■ By another section of the Probate Code in a different chapter ''All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions.'' (§ 1230.) These ''rules of practice'' are more particularly specified in § 1233 which reads: ''Except as otherwise provided by this code, the provisions of part II of the Code of Civil Procedure are applicable to and constitute the rules of practice in the proceedings mentioned in this code with regard to trials, new trials, appeals, records on appeal, and all other matters of procedure.'' One of the provisions of the Code of Civil Procedure authorizes a dismissal ''by the court, when either party fails to appear on the trial and the other party appears and asks for the dismissal . . . '' (Code of Civil Procedure, § 581.)

The language of § 1233 is broad and all-inclusive. It not only refers to ''trials'' but also to ''all other matters of procedure.'' Therefore a determination of the question concerning the authority of the court to dismiss a claim to heirship turns upon whether §§ 1080–1082 contain within themselves a complete and exclusive procedure for determining heirship, or whether they should be construed as being *in pari materia* with §§ 1230–1233, *supra,* thus making applicable the general

rules of practice, including the provision for a judgment of dismissal.

Former § 1664 of the Code of Civil Procedure, which was enacted in 1885, and upon which §§ 1080–1082 of the Probate Code are based, outlined a detailed procedure for the conduct of heirship hearings, including provision for notice, appearance, entry of defaults, limitation of time for filing pleadings, appeals, costs, and other matters. Upon enactment of the Probate Code in 1931, most of these detailed items of procedure were omitted from the new §§ 1080–1082. That fact, however, is not indicative of an intention to dispense with these procedural steps in hearings to determine heirship, but rather of an intention that essential matters of procedure not expressly covered by the language of §§ 1080–1082 should be governed by the rules of practice for civil actions contained in the Code of Civil Procedure, made applicable by §§ 1230–1233, *supra.* Other considerations compel that conclusion.

Prior to 1931, the court unquestionably had the right to enter judgments of nonsuit or dismissal in proceedings to determine heirship (*Hitchcock* v. *Superior Court*, 73 Cal. 295 [14 Pac. 872]; *Estate of Kasson*, 141 Cal. 33 [74 Pac. 436]; former § 1664, Code of Civil Procedure). The provisions of the new enactment clearly show an intention to state the applicable rules of procedure in general terms rather than by particular specification in order that they may conform, as nearly as is consistently possible, to those for civil actions.

No weight should be accorded the argument that the rules of civil practice should not govern an heirship hearing because such a proceeding is not adversary, or in the nature of a civil action, but is essentially a proceeding *in rem* to determine those entitled to inherit the assets of an estate. It is true that jurisdiction of the probate court is a jurisdiction *in rem.* The *res* is the decedent's estate, and the object of the probate and administration proceedings is to secure distribution to the persons entitled to share in the estate. (*Edlund* v. *Superior Court*, 209 Cal. 690 [289 Pac. 841]; *Lilienkamp* v. *Superior Court*, 14 Cal. (2d) 293, 298 [93 Pac. (2d) 1008].) But certain probate proceedings, such as a will contest, are also commonly denominated as adversary proceedings and partake of the nature of a civil action, requiring a limited application in probate of the rules of civil practice. (*Estate of Morrison*, 125 Cal. App. 504, 507 [14 Pac. (2d) 102].)

Such is a proceeding to determine heirship, which is in essence a proceeding *in rem* but also constitutes, to a certain extent, an adversary contest. First of all the claimant to heirship must take affirmative action to establish his own relationship to the decedent and his right, flowing from that relationship, to inherit the estate, the *res*. Second, he may then contest the claims of other alleged heirs in the same or a closer degree of relationship. When conflicting claims are involved the proceeding becomes an adversary one and partakes of the nature of a civil action. (*Estate of Kasson, supra; Estate of Friedman*, 173 Cal. 411 [160 Pac. 237].) This dual character was recognized in the Friedman case, which was a proceeding to determine the heirship and succession to the estate of a decedent, where the court said:

"Each person filing a complaint or answer in the proceeding, and setting up title to the whole estate by a distinct line of kinship, is necessarily an actor for himself and against all other persons who also claim the entire estate. His claim is antagonistic to that of all the others, and the claim of each of the others is antagonistic to him. With respect to every other claimant so alleging an interest, the case stands precisely the same as if the contest was between him and that person alone. 'His hand will be against every man, and every man's hand against him'. . . . The case does not stand precisely in the same position as an ordinary case where the defeat of one necessarily results in a victory for the other. In cases of the kind here presented the defeat of one claimant merely eliminates him from the contest, leaving the others to fight it out to the finish, but none the less, each is an adverse party to the other and is entitled to attack the appeal of the other."

Petitioners further contend that as § 581, subd. 3 of the Code of Civil Procedure only authorizes entry of a judgment of dismissal "when either party fails to appear on the trial," the judgment here entered was invalid because at the time of its entry the "trial" had not commenced. A construction of the word "trial" which would support that conclusion gives it much too limited a meaning. Generally speaking, a "trial" includes all rulings of a court in proceedings before it made in furtherance of the decisions made upon the issues in the case which form the basis of the judgment. (*Stow* v. *Superior Court*, 178 Cal. 140 [172 Pac. 598]; see

also *Green* v. *Duvergey,* 146 Cal. 379 [80 Pac. 234] ; *Goldtree* v. *Spreckels,* 135 Cal. 666 [67 Pac. 1091].)

The petitioners take the position that a trial has not commenced until the jury has been impaneled and the introduction of evidence begun. Among other decisions upon which they rely is *Superior Oil Co.* v. *Superior Court,* 6 Cal. (2d) 113 [56 Pac. (2d) 950], in which it was held that the case had not been brought to trial within the meaning of § 583 of the Code of Civil Procedure by a hearing upon a preliminary injunction. But in the present proceeding the judgment of dismissal was rendered after the court had commenced to examine the great volume of evidence that was to be presented to the jury and to make rulings upon its admissibility. These determinations were decisions on questions of law and were made in furtherance of the trial upon the merits. The trial had, therefore, begun and the court was authorized to render a judgment of dismissal against petitioners for their failure to attend.

The next question is whether the trial court abused its discretion in denying petitioners' motion under § 473 of the Code of Civil Procedure to vacate the judgment. The undisputed facts show that from May 8th to July 24th, 1939, petitioners, duly represented by counsel, participated in preliminary proceedings in the heirship hearing. On the date last mentioned, while they were so represented in court, a motion previously made for an order dismissing the claims of all persons who had not appeared in person or through counsel was renewed. The court, in an effort to conduct the trial in an orderly manner, granted the motion, and further directed that no attorney or claimant absent himself from the trial without permission, or without providing a substitute, or stipulating to be bound by all that transpired in his absence.

The attorneys representing petitioners then gave notice in open court of their intention to withdraw and that petitioners would thereafter appear in the proceeding *in propria personae.* On July 25, 1939, a substitution in writing to that effect was filed. On the same day judgments of nonsuit or dismissal were entered against all claimants who were not present or represented by counsel and who failed to respond to the roll call, petitioners being among them. Petitioners did not appeal from the judgment of dismissal. Following

its entry, and until after December 26, 1939, the court was engaged almost continuously in reviewing depositions and documentary evidence which had been filed in the proceeding on behalf of the various claimants. On December 26th, petitioners appeared by new counsel and gave formal notice of their intention to move under § 473, *supra*, to vacate the dismissal. Such motion was subsequently made and denied. It was renewed on April 15, 1940, and again denied.

No facts are shown which would excuse petitioners' failure to comply with the requirements of the court concerning attendance at the trial and no satisfactory explanation is given for their delay in waiting for five months before seeking to be relieved from default. There were in all more than 460 claimants to heirship, and the estate is of an approximate value of $5,000,000. During the period of petitioners' nonappearance, the trial court ruled upon objections made by the different claimants to testimony contained in the depositions, which were read in open court, and to the documentary evidence which was offered. The purpose of these preliminary proceedings was to shorten and simplify the trial of the issues of fact which it was proposed to submit to a jury. To have permitted petitioners to re-enter the proceeding and demand a hearing *de novo* of all these preliminary matters which had been decided in their unexplained absence, would have been manifestly unfair to the other claimants. In refusing to vacate the judgment of dismissal the court exercised a wise discretion and its order must be upheld.

Concerning the second claim of heirship, the judgment rendered against the petitioners has become final and it amounts to a determination of their rights to the same extent and in the same manner as if there had been an adjudication upon the merits. (*King* v. *Superior Court*, 12 Cal. App. (2d) 501 [56 Pac. (2d) 268]; 9 Cal. Jur., p. 524, sec. 16.)

The alternative writ of mandate is discharged and the proceeding dismissed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

CARTER, J., Dissenting.—I dissent.

I do not agree with the conclusion reached in the majority opinion or the reasons upon which it is based. In view of the superficial treatment of both the facts and the law in the majority opinion, I feel constrained to review the entire proceeding before us and express my view of the law applicable to the factual situation presented by the record before us.

This is an original proceeding in mandamus to compel the Superior Court of Los Angeles County to permit petitioners to participate in a proceeding to determine heirship pending in said court in the matter of the estate of Michael O'Dea, deceased. It appears from the petition and answer thereto that Michael F. O'Dea died intestate on January 22, 1938. He was a resident of Los Angeles County and left an estate valued at approximately $5,000,000. Proceedings for the probate of his estate were promptly instituted in the Superior Court of Los Angeles County. On August 11, 1938, Maria McCarthy and others filed in said estate proceeding a petition for the determination of heirship in accordance with the provisions of section 1080 of the Probate Code. Said petitioners claimed to be first cousins and related to decedent in the fourth degree. A hearing on said petition was set for December 5, 1938, and the clerk gave notice thereof in accordance with the provisions of section 1200 of the Probate Code. Prior to said last-mentioned date, numerous claimants appeared and filed their written statements of heirship wherein they respectively claimed to be heirs at law of the decedent and interested in his estate. A demand was made for a jury trial on the issues raised by said petition and statements, and the trial judge announced that said demand would be granted. Thereafter, the hearing on the petition and statements so filed was regularly continued from time to time until July 17, 1939. Between December 5, 1938, and May 8, 1939, several hundred depositions were regularly taken in Ireland, Canada and in the eastern portion of the United States on behalf of claimants who had filed their statements prior to December 5, 1938. On May 8, 1939, Henry J. O'Day and Genevieve O'Day Jensen, petitioners herein, first appeared and filed their statement in said proceeding and thereafter regularly participated in the proceedings had therein between that date and the 24th day of July, 1939. On July 17, 1939, the hearing of the issues raised by the original petition to determine heirship

and all statements by other claimants theretofore filed in said proceeding, aggregating more than 460 claimants in number, was commenced in the trial court. At said hearing the names of all claimants who had theretofore appeared were called, and petitioners herein, through their then attorneys of record in said proceeding appeared and participated therein. On that date attorneys for the petitioners named in the original petition to determine heirship, moved the court for an order defaulting all persons who had not appeared in person or through counsel in said heirship proceeding. Said motion was continued to July 18, 1939, and on that date to July 24, 1939. On July 24, 1939, said motion was renewed, and while the petitioners herein were represented by their attorneys then in attendance, the court, in an effort to conduct the trial in an orderly manner, granted said motion. Likewise, while petitioners herein were so represented, the court made another order in open court, ordering that no attorney or claimant absent himself from the trial without permission of the court, or providing for a substitute, or stipulating to be bound by all that transpired in his absence, and furthermore, that no statements of heirship be filed after July 24, 1939, except upon a showing under section 473 of the Code of Civil Procedure. On July 24, 1939, the attorneys then representing petitioners herein gave notice in open court of their intention to withdraw as attorneys for said petitioners, and that petitioners would thereafter appear in said proceeding *in propria personae,* and on July 25, 1939, substitution in writing to that effect was filed in said proceeding. On the same date and following the roll call of claimants in said proceeding, the attorneys for the petitioners named in the original petition to determine heirship moved the court to enter the default of all claimants who had not at that date appeared in said proceeding, and said motion was granted. Following the granting thereof the same counsel moved the court for a judgment of nonsuit against all claimants who had theretofore appeared in said proceeding, but who were not present or represented by counsel at the trial on July 25, 1939, and who had failed to respond upon said roll call on that date. Petitioners were among those who so failed to respond to their names. Said motion was granted and a judgment of nonsuit was, on said date, duly entered against all such claimants, including said petitioners. Following the granting of said motions, and

until after the 26th of December, 1939, the court was engaged almost continuously in reviewing the various depositions and documentary evidence which had been filed in said proceeding on behalf of the various claimants. The depositions were read in open court and documentary evidence was offered in support of some of the claimants, and the court made its rulings on the objections made to the admissibility of the documentary evidence and the oral testimony contained in the various depositions. The announced purpose of this preliminary proceeding was to shorten and simplify the trial of the issues of fact before a jury subsequently to be impaneled. On December 26, 1939, petitioners herein appeared in the trial court by other counsel and gave formal notice of intention to move under section 473 of the Code of Civil Procedure to vacate said judgment of nonsuit as to them. A written notice of such motion was thereupon filed. On January 5, 1940, this motion was heard and denied by the trial court. On April 15, 1940, petitioners herein made a second motion under said section 473 to vacate said judgment of nonsuit, which motion was denied.

Petitioners contend that the trial court acted in excess of its jurisdiction in directing the entry of a judgment of nonsuit and dismissal against them and that said judgment is therefore void and of no effect and does not constitute a bar to their participation in the proceeding to determine heirship in said estate.

Petitioners assert in support of their contention that there is no authority or power in the respondent court under any of the provisions of the Probate Code to grant a default or nonsuit in a proceeding to determine heirship and that section 581 of the Code of Civil Procedure is not applicable because the trial of the proceeding had not commenced at the time the judgment of nonsuit and dismissal was granted.

Respondent Superior Court contends that the trial of said proceeding had commenced and that the provisions of section 581 of the Code of Civil Procedure are made applicable to proceedings of this character by virtue of sections 1230 and 1233 of the Probate Code.

I think it is clear that in enacting sections 1080, 1081 and 1082 of the Probate Code, it was the obvious intention of the legislature to provide a simple and expeditious method of determining who are the rightful heirs of an estate and en-

titled to distribution thereof. The proceeding contemplated by said sections is somewhat in the nature of a civil action wherein the respective claimants are adverse to each other but they are not necessarily adverse parties to each other in the sense that they are seeking redress of any grievance arising out of the violation of any right enuring to the respective claimants. Such proceeding is essentially one *in rem* to determine who is entitled to the assets of the estate. It is conceivable that the trial court might determine that none of the claimants who have filed petitions or statements of heirship are the rightful heirs to the estate and are therefore not entitled to the distribution of any portion thereof; in other words, the court is not required to decide in favor of any claimant who does not prove to the satisfaction of the court that he is a relative of the deceased and entitled to distribution of a portion of his estate under the laws of descent of this state. It is possible therefore that the result of such a proceeding might be a determination that deceased left no living heirs and his estate would escheat to the State of California.

It cannot be denied that the ultimate aim and purpose of administration proceedings, including proceedings to determine heirship, is to ascertain the persons entitled to share in the estate of the decedent and to decree distribution accordingly. Every consideration of justice and public policy dictates that estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be directed to the accomplishment of this purpose. (*Edlund* v. *Superior Court,* 209 Cal. 690 [289 Pac. 841].)

With the foregoing consideration in mind let us proceed with an analysis of the provisions of sections 1080, 1081 and 1082 of the Probate Code in their application to the accomplishment of the above-mentioned object and purpose. Said sections contain no provision for the entry of defaults, dismissals or nonsuits which are characteristic of civil actions. In this respect proceedings under these sections are somewhat analogous to a proceeding under former section 1668 of the Code of Civil Procedure which authorized the filing of objections to a petition for distribution by one claiming the right to have a share of the estate distributed to him differently from that proposed in the petition for distribution. It was

held by this court that since no provision was contained in section 1668 authorizing the entry of a default against such a claimant, he was not barred even if he failed to file his objections prior to the actual commencement of a hearing on a petition for distribution. (*Estate of Ross*, 185 Cal. 8 [195 Pac. 674].) While section 1080 provides that the clerk shall set the petition to determine heirship for hearing by the court, the only notice required to be given prior to such hearing is a ten days' notice by posting in the manner required by section 1200 of the Probate Code. After the original petition to determine heirship is filed, any person claiming to be an heir to the estate may appear and file a written statement setting forth his interest in the estate. The petition and statements so filed constitute the pleadings in such a proceeding.

Section 1081 provides for a hearing on the petition and any objection thereto that may have been presented. While no reference is made in said last-mentioned section to a hearing on the statements of heirship filed subsequent to the petition, it may be assumed that it was the intention of the legislature that all claimants whether by petition or statement are entitled to have their claims heard by the court before the court determines who are the heirs of the decedent and entitled to distribution of his estate. Section 1082 provides that when the decree determining heirship becomes final, it shall be conclusive upon the matters determined during the remainder of the administration of the estate and upon any subsequent proceeding for distribution.

Turning to section 1230 of the Probate Code we find that provision has been made for the framing of the issues to be tried, if not already sufficiently made up; also as to who are to be regarded as plaintiffs and who defendants; that if no jury has been demanded the issues of fact are to be tried by the court "in conformity with the requirements of the rules of practice in civil actions," and "the court must . . . sign and file its decision in writing as provided in civil actions." It is also provided in section 1233 of the Probate Code that when not otherwise provided by said code, "the provisions of part II of the Code of Civil Procedure (sections 307–1060a) are applicable to and constitute the rules of practice in the proceedings mentioned in this code with regard to trials, new trials, appeals, records on appeal, and all other matters of procedure." Obviously, these last-mentioned sec-

tions of the Probate Code are applicable to proceedings to determine heirship under sections 1080, 1081 and 1082 of said code.

The problem presented, however, is whether or not the provisions of section 581 of the Code of Civil Procedure are applicable to a proceeding of this character and may be relied upon to sustain the order of the trial court attacked by petitioners herein. I am of the opinion that said section 581 is not applicable to proceedings of this character, and that a nonsuit may not be granted against a claimant who has regularly appeared and filed a statement of heirship in such proceeding pursuant to the provisions of section 1080 of the Probate Code. As I have heretofore stated, it is the duty of the probate court to determine who are the rightful heirs of an estate, and this duty exists whether or not such heirs actually make an appearance in the estate proceeding and file a statement of heirship; in other words, if it should appear from competent evidence produced in an heirship proceeding that one or more persons other than those filing statements of heirship are the next of kin and lawful heirs of decedent and entitled to the distribution of his estate pursuant to the laws of descent of this state, it is the duty of the probate court to make distribution of said estate to such persons to the exclusion of all claimants who may have filed statements of heirship but who have failed to establish their right as next of kin and heirs at law of the decedent.

In view of the peculiar nature of a proceeding to determine heirship, it should not be said that any of the participants are either plaintiffs or defendants, but each is an independent actor asserting his claim to share in the assets of the estate either in common with or to the exclusion of all other claimants. When such a proceeding comes on for hearing it is the obvious duty of the trial court to direct the conduct of the trial and require the respective claimants to present their proof in the order which the trial court deems will best facilitate the disposition of the case. It necessarily follows that if a claimant is not present and ready to proceed when directed by the trial court to present evidence in support of his claim, such claimant may be barred from the further prosecution of such claim. It likewise follows that a claimant who absents himself from the proceeding is barred from raising any objection to any of the proceedings which have taken

place during his absence; in other words, he must accept the proceedings as he finds them after his return and he cannot be heard to complain as to what has taken place during his absence.

In the case at bar petitioners participated in the proceeding through counsel employed by them from the time they filed their statement of heirship on May 8, 1939, until July 24, 1939. On the last-mentioned date their counsel withdrew and they thereafter appeared *in propria personae*. It does not appear that at the time the court granted the motion for a judgment of nonsuit and dismissal against petitioners, they had been called upon to present any evidence in support of their statement of heirship or otherwise participate in the proceeding except to be present in court since the commencement of the hearing on July 17, 1939. The absence of petitioners from the courtroom thereafter would not preclude the trial court from determining that they were the next of kin and therefore the rightful heirs of decedent if the evidence subsequently presented disclosed this to be the situation.

An analogous situation might be said to exist in an eminent domain proceeding where several separate parcels of land are involved, title to which is held in severalty. The mere fact that one of the owners who had appeared in such proceeding and filed an answer was absent during a portion of the trial would not justify the trial court in granting a nonsuit as to him and denying him compensation for his land if evidence was produced from which the court could determine the amount of compensation and damages to which he was entitled; in other words, the court would have no authority in such a case to grant a nonsuit or dismissal against such defendant in the event of his failure to appear at the trial.

In view of the above discussion it seems obvious to me that the provisions of section 581 of the Code of Civil Procedure are not applicable to an heirship proceeding under sections 1080, 1081 and 1082 of the Probate Code, and it necessarily follows that the order of the trial court granting a judgment of nonsuit and dismissal against petitioners was unauthorized and petitioners should be permitted to participate in such proceeding notwithstanding such order.

However, even if we assume that section 581 of the Code of Civil Procedure is applicable to heirship proceedings, the result would be the same. Accepting the conclusion that such

a proceeding is in the nature of a civil action in which the position of the parties is adverse to each other, it must be conceded then that each party is in a sense either a plaintiff or a defendant, or a defendant and a cross-complainant. The one who initiates the proceeding by first filing the petition to determine heirship, is a proponent of a claim, and in that sense a plaintiff, but if other claims are filed in the proceeding which conflict with his, he is also a defendant as to such claims—that is, he is defending against them. As to claimants other than the ones initiating the proceeding, they are defendants in the sense that they are resisting the claims of the ones initiating the proceeding and also, possibly, claims of other claimants. They are plaintiffs, or it may be said, cross-complainants in that they are affirmatively urging their claim to the estate.

With these thoughts in mind let us turn to section 581 of the Code of Civil Procedure which provides for involuntary dismissals for *failure to appear on the trial.* Petitioners' claim of heirship was dismissed for their failure to so appear, section 581 provides in part:

"An action may be dismissed, or a judgment of nonsuit entered, in the following cases: . . . 3. By the court, when *either* party fails to appear *on trial,* and the other party appears and asks for a dismissal. . . ." It may be assumed that the appearance on trial to which reference is made, is the actual physical presence in court in person or by counsel. The difficult question is the meaning and scope of the words "either party." Reasonableness and practicality, which is the foundation of all law, compels the following conclusions as to the proper interpretation of those words. In an ordinary civil action it is obvious that the plaintiff would not ask for or desire a dismissal of his action if the defendant did not appear on the trial. If he desired such a dismissal he would proceed to a voluntary abandonment of the action as prescribed by section 581 (4) of the Code of Civil Procedure. If he did not desire a dismissal, which in the great majority of instances would be the case, he would proceed to prove his case and obtain judgment against the defendant; in fact, in order to obtain a judgment it would be necessary for him to prove the elements of his case. On the other hand, the defendant, in the event of the nonappearance on the trial of the plaintiff, would desire that the action be dismissed or a nonsuit entered, and thus he would wish to and could avail

himself of subdivision 3 of section 581. He might wish to proceed with his proof negating plaintiff's claims in the action, in which case he could obtain a judgment on the merits which would bar plaintiff from prosecuting a new but similar action against him. It follows that the only occasion on which a dismissal for nonappearance on the trial might be desired by *both plaintiff and defendant,* would be where defendant had demanded affirmative relief in his answer such as by counterclaim or cross-complaint. Under those circumstances the plaintiff would desire a dismissal of defendant's request for affirmative relief when defendant failed to appear, and if plaintiff failed to appear defendant might demand a dismissal of plaintiff's action. That brings us to the query as to what *time* during the trial a failure to appear may justify a dismissal under subdivision 3 of section 581 of the Code of Civil Procedure. The only reasonable interpretation of section 581 (3) is that that time is the point when it becomes the duty of the party asking affirmative relief to proceed with his case, if he intends to prosecute his claim. A plaintiff's failure to appear at the opening day of the trial would be a justifiable ground for granting defendant's motion to dismiss, because the burden is upon plaintiff to go forward at that time. The defendant, at that time, however, is on the defensive, and the only prejudice that would be suffered by him would be a waiver of any objection to the proceedings taken in his absence. When it became the duty of the defendant to proceed with his affirmative case, then plaintiff could have a dismissal of the same if defendant were not present, and if he is present and does proceed, the absence of the plaintiff while he was so proceeding would not entitle defendant to a dismissal of plaintiff's action. To interpret section 581 (3) otherwise would mean that in a case where defendant sought affirmative relief and failed to appear at the trial when the plaintiff was proceeding with his case, the defendant's counterclaim or cross-complaint could be forthwith dismissed. In my opinion such a harsh rule should not be invoked. Defendant may not be particularly concerned about plaintiff's action, his reliance being placed on his cross-complaint. Surely it cannot be said that in a case where defendant seeks no affirmative relief, that by the dismissal provisions of section 581 (3), he is in effect defaulted and prevented from defending against plaintiff's action by not be-

ing present when plaintiff commences to prove his case. He may appear later but before the action is submitted, being bound, of course, by all that has occurred in his absence. (*Warden* v. *Lamb,* 98 Cal. App. 738 [277 Pac. 867].)

As we have seen, the parties are both plaintiff and defendant or plaintiff and defendant and cross-complainant in an heirship proceeding. It does not appear that the occasion had yet arisen at the hearing when petitioners were required to go forward with proof of their claim of heirship; the court did not direct them to do so. It merely ordered them to be present in court. Under the test heretofore stated, the dismissal of petitioners' claim was prior to the time that they were under a duty to proceed to prove their claim. Therefore, the court exceeded its jurisdiction in dismissing petitioners' claim of heirship.

It has been held that the only exception to the general rule confining appeals from orders or judgments in probate to those specified in section 1240 of the Probate Code is, that an appeal will lie from an order granting or denying a motion for a new trial in those proceedings in probate in which such motion is proper. (*Estate of O'Dea,* 15 Cal. (2d) 637 [104 Pac. (2d) 368].) An order granting a nonsuit or judgment cf dismissal in an heirship proceeding is not one of those orders mentioned in said section 1240. Therefore, petitioners have no remedy by appeal. However, an attempt was made by petitioners to appeal from an order of the trial court denying them relief from such order under section 473 of the Code of Civil Procedure, but such appeal was dismissed by this court. See *Estate of O'Dea, supra,* wherein this court said:

"Section 1240 of the Probate Code is simply the reenactment of subsection 3 of section 963 of the Code of Civil Procedure, and this court has on numerous occasions held that no appeal will lie from an order in probate denying relief under section 473 of the Code of Civil Procedure, *or from any other order not specified in subsection 3 of section 963 of the Code of Civil Procedure, with the one exception above-mentioned.*"

From what I have said in the foregoing opinion, it follows that petitioners are entitled to the relief prayed for in their petition herein, and a peremptory writ of mandate should issue directing the respondent court to permit petitioners to participate in the proceeding to determine who are the rightful

heirs to the Estate of Michael F. O'Dea, deceased, pending in said court.

Petitioners' application for a rehearing was denied September 25, 1941.