[L. A. No. 18338.   In Bank.   Oct. 1, 1942.]

LUCY FAY BALES, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Guy F. Bush, Arthur E. Briggs and E. Llewellyn Overholt for Petitioner.

J. H. O'Connor, County Counsel, and Ernest R. Purdum and Douglas De Coster, Deputies County Counsel, for Respondent.

Faries & McDowell, Bailie, Turner & Lake, Salisbury, Robinson & Himrod, Frank J. Mackin, Charles A. Loring, Norman A. Bailie, Richard A. Turner and George K. Ford, as Amici Curiae, on behalf of Respondent.

CURTIS, J.—This is an application for a writ of mandate to compel the Superior Court of Los Angeles County to permit the petitioner to participate in a proceeding to determine heirship pending in that court in the matter of the estate of Michael F. O'Dea, deceased. On several prior occasions controversial issues respecting the status and rights of claimants to this estate have been considered and adjudicated by this court, and for a full recital of the facts regarding the heirship proceeding generally, reference is made to the previous opinions rendered. (*Estate of O'Dea,* 15 Cal.2d 637 [104 P.2d 368]; *Marlow* v. *Superior Court,* 17 Cal.2d 393 [110 P.2d 11]; *O'Day* v. *Superior Court,* 18 Cal.2d 540 [116 P2d 621].) The pertinent facts necessary to reach a decision in the present case and as related in the petition and answer thereto are as follows:

On July 25, 1939, the Superior Court of Los Angeles County, in response to an appropriate motion by counsel for a certain group of the numerous claimants to the O'Dea estate, made its order directing the entry of a default against all persons who had not at that date appeared or filed petitions to determine heirship. Since the making of that order, the court has been engaged from time to time in reviewing the numerous depositions and documentary evidence which had been filed in the proceeding in behalf of the various claimants, and in ruling on the objections made to the admissibility of such oral testimony and evidence preliminary to the scheduled impanelment of a jury, as demanded, for the trial of the issues of fact involved in the heirship determination. On October 27, 1941, the petitioner herein served and filed a notice of motion that she would move said court for an order permitting the filing of her appearance and statement of claim of interest in the estate. This motion was accompanied by an affidavit of merits setting forth the reasons for the peti-

tioner's delay in presenting her claim as the daughter of the deceased Michael F. O'Dea. According to her account of various controlling factors entering into her personal background and family history, supported by a genealogical chart and appropriate affidavits of several persons corroborating her recital of material events, the petitioner first learned of the death of O'Dea and the contest over his estate on October 7, 1941, when her attention was directed to a current newspaper article referring to the heirship proceeding and the alleged existence of a daughter of the deceased. It further appears from her affidavit that the petitioner, immediately upon her discovery of the pendency of this proceeding, consulted an attorney as to her rights in the matter and pursuant to his advice, presented her motion for leave to file her claim, as above mentioned. Affidavits in opposition to the petitioner's motion were filed on behalf of other claimants to the estate, and following the taking of oral testimony at several hearings held in regard to this matter, the court on November 12, 1941, made its order permitting the petitioner to file an amended claim of heirship. As part of its ruling the court, after characterizing the amended claim as simply an "enlargement" of the petitioner's first application and as "legally sufficient," directed that the petitioner in the forthcoming jury trial present her claim first and the evidence in support thereof.

On November 14, 1941, counsel for opposing claimants filed a motion to set aside and vacate the order of November 12, 1941, and to strike from the files the petitioner's appearance in the heirship proceeding, on the ground that it was in defiance of the general default order of July 25, 1939, and further, that it was a sham, a fraud and a contempt of court. Affidavits in support of and in opposition to the motion to strike were filed by the respective parties, and on December 2, 1941, following successive hearings at which evidence both oral and documentary was introduced, the court made its order vacating the previous order of November 12 and striking from the record the petitioner's aforementioned appearance, without prejudice to a renewal upon the showing of merit. On March 6, 1942, the petitioner again moved the court for permission to file her claim, which as incorporated in a "second amended statement" differed as to certain details from her previous statements. In conjunction with this motion she presented her affidavit of merits, some

twenty-three supporting affidavits, and a family chart. Numerous opposing affidavits were filed on behalf of other claimants to the estate, considerable oral testimony was taken at successive hearings, and after extensive argument by counsel for the respective parties the court on April 2, 1942, denied "the motion of Lucy Fay Bales to file or refile (her) appearance or statement of claim of heirship," and the proceedings on said motion were ordered dismissed.

On April 16, 1942, the petitioner applied to this court for a writ of mandate "compelling the respondent court to restore to the files, records and calendar, the appearance, amended appearance and last filed appearance and statement of heirship, and to assume and take jurisdiction of the cause manifested and commenced by said appearance and amended appearance and statement of heirship of the petitioner presented and filed pursuant to order of court on November 12, 1941, and said last appearance and statement of claim filed on March 16, 1942, and to provide the petitioner with a trial and hearing in the manner prescribed by law on the merits of the issues raised by said statements of heirship, and to allow and permit the petitioner to participate fully in and be represented in all proceedings" now pending to determine heirship in the estate of Michael F. O'Dea, deceased.

██ Of fundamental importance in the disposition of this mandamus proceeding is the determination of the effect of the general order of default rendered on July 25, 1939, upon the petitioner's application for leave to file her claim of heirship pursuant to the provisions of sections 1080-1082 of the Probate Code. In *O'Day* v. *Superior Court, supra,* the propriety of that default order and the entry of a judgment of dismissal based thereon were sustained in respect to *claimants who had previously appeared in the heirship proceeding* but who were not present or represented by counsel at the trial on July 25, 1939, and who failed to respond upon the roll call on that date. It was there declared that matters of procedure not covered by sections 1080-1082 of the Probate Code are governed by the rules of practice for civil actions contained in the Code of Civil Procedure, and under authority of section 581, subdivision (3), of the Code of Civil Procedure, the probate court could order a dismissal against previously appearing claimants who failed to attend the trial, when other claimants appeared on the day specified and asked for such dismissal. From these brief remarks as to the scope

of the O'Day decision it is manifest that that case does not purport to conclude the rights of the present claimant to participate in the heirship determination, for the petitioner is in the distinguishable position of *not having appeared* in the O'Dea proceeding until some twenty-seven months following the order of default made on July 25, 1939, and, according to her sworn statement, of not having had knowledge of the existence of such litigation until some few weeks before her assertion of her claim of heirship on October 27, 1941.

Prior to 1931, the year of the enactment of the Probate Code, the court, under authority of former section 1664 of the Code of Civil Procedure, unquestionably had the right to make an order adjudging *all* persons (named or not named) who had not appeared in an heirship proceeding to be in default. (*Hitchcock* v. *Superior Court,* 73 Cal. 295 [14 P. 872]; *Estate of Kasson,* 141 Cal. 33 [74 P. 436].) But sections 1080-1082 of the Probate Code, outlining a simple and expeditious method of determining who are the rightful heirs of an estate and entitled to the distribution thereof, contain no reference to the entry of defaults in such proceedings. The omission of such provision for, or mention of, defaults in the present statute would imply abrogation of the former practice (23 Cal. Jur., p. 778; *Estate of Todd,* 17 Cal.2d 270 [109 P.2d 913]) and the application of usual civil procedure. (§ 1233, Prob. Code.) Sections 585 and 586 of the Code of Civil Procedure, dealing generally with the entry of defaults against *named* defendants in civil actions, furnish no authority for a probate court's order of default against a person who had not theretofore appeared in a proceeding to determine heirship. Every consideration of justice and sound policy requires that the estates of decedents be distributed to persons rightfully entitled thereto, and that every concern and endeavor of a probate court should be directed to the accomplishment of that object. (*Edlund* v. *Superior Court,* 209 Cal. 690 [289 P. 841].) The consideration of this ultimate aim of heirship proceedings in correlation with the present lack of statutory authority for the court's entry of the default of a claimant of an estate who had not at the date of such ruling filed a statement of heirship impels the conclusion that the respondent court's order of July 25, 1939, as to the petitioner, was an act in excess of its power and hence not binding upon her. In so

deciding this question it is appropriate to mention here that while the foregoing observations as to the limited operative effect of this default order are contrary to the views held by this court at the time of its denial, without opinion, of an ex parte application made by a similarly situated claimant seeking relief through the issuance of a writ of mandamus to enforce his right to participate in this same heirship proceeding (*Thomas J. Mahoney* v. *Superior Court of Los Angeles*, L. A. No. 18220, Minutes of the Supreme Court, January 27, 1942), the fuller presentation of this issue as contained in the briefs on file herein has induced this change of viewpoint. Accordingly in the present case the respondent court, upon determining on November 12, 1941, that the petitioner's amended statement of heirship was "legally sufficient," properly ordered that the petitioner be permitted to file her claim, in disregard of the general default order of July 25, 1939.

The next point to be considered is whether it was within the discretion of the respondent court to refuse the petitioner the right to participate in the determination of the heirship proceeding. This question arises in connection with the court's order of December 2, 1941, vacating its previous order of November 12, 1941, in response to the motion of opposing claimants that the petitioner's appearance in the heirship proceeding be stricken as a "sham, fraud and a contempt of court." In support of its position that after consideration of the extensive and conflicting oral and documentary evidence introduced at the successive hearings held with reference to the aforesaid motion to strike, it was within its power to decide preliminarily whether or not the claim of the petitioner possessed sufficient merit to permit her to intervene in the heirship proceeding, the respondent court relies upon cases involving contests of wills, wherein it is settled that the contestant is not entitled to have the question of his interest tried before a jury, but that the determination of such initial matter is for the court. (*Estate of Land,* 166 Cal. 538, 540 [137 P. 246]; *Estate of Stark,* 48 Cal.App.2d 209, 217 [119 P.2d 961].) The force of this suggested analogy is completely dispelled upon reference to the code provisions governing the conduct of these respective proceedings. Section 371 of the Probate Code limits the issues of fact that may be tried by a jury upon the request of either party to those *substantially affecting the validity of the will*, specify-

ing such matters to involve the competency of the decedent to make a will, his freedom from duress, menace, fraud, or undue influence, the due execution of the will, or "any other question substantially affecting the validity of the will." Since it was definitely decided in *Estate of Dolbeer*, 153 Cal. 652, 657 [96 P. 266, 15 Ann. Cas. 207], that the right to a trial by jury in probate proceedings exists only where the statute expressly confers such right, the failure to incorporate in section 371 as a matter for the consideration of the jury the question of interest of an objector to the probate of a will establishes such preliminary issue as one for the determination of the court. On the other hand, section 1081 of the Probate Code, relating to the conduct of the hearing in an heirship proceeding, provides that "at the time appointed, *a trial of the facts* must be by jury, as in the case of the contest of a will, unless a jury is waived. . . ." (Italics added.) Since the very nature of this latter litigation fixes the determination of the alleged existence of relationship borne by the claimant to the deceased to be the controlling factor, section 1081 must be construed as giving to every such claimant, whether upon initiating petition or statement of heirship presented after the commencement of the proceeding, the right to have all evidence affecting the disposition of this single, ultimate issue submitted to the jury for its consideration. Consistent with this requirement of section 1081 and the scheduled impanelment of a jury for the trial of the facts in the O'Dea heirship proceeding, it is manifest that the respondent court, in passing upon the merits of the petitioner's claim incidental to its order dismissing her from the proceeding, usurped the functions of the jury.

The petitioner upon presenting her statement and accompanying documents showing her status as an heir of the deceased, established her absolute right to participate in the proceeding. (§ 1080, Probate Code.) The mere fact that the petitioner sought entry at such a late date, the trial of certain questions of law preliminary to the impanelment of the jury having commenced in July, 1939, does not furnish the respondent court with discretionary power to exclude her from the heirship proceeding in an endeavor to facilitate the disposition of the O'Dea litigation. Decisive of this point is the following language of section 1081 of the Probate Code: "Any claimant entering or re-entering

such proceedings shall be bound by evidence introduced and depositions taken prior to his entry into the proceeding or during his absence therefrom, except that he may in the discretion of the court have the right to examine any witness further if it be possible so to do.'' This statutory language, expressive of the Legislature's intention to authorize a claimant's entry or re-entry into an heirship proceeding at any time prior to the submission of the issues of fact for decision, serves to emphasize the right of the petitioner, subject to the specified limitation, to intervene in the O'Dea litigation. Accordingly, it was beyond the bounds of its discretionary power for the respondent court to determine, as a matter of expediency affecting the conduct and progress of the hearing, to exclude the petitioner from participation in the heirship proceeding.

■ ''Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided (*Smith* v. *Westerfield*, 88 Cal. 374, 379 [26 P. 206].)'' (*Estate of Strong*, 119 Cal. 663, 666 [51 P. 1078].) The respondent court's order striking from the heirship proceeding the appearance of the petitioner, despite her compliance with the provisions of section 1080, was clearly unauthorized by any provision of law and was therefore void and of no effect whatsoever. (*Estate of England*, 214 Cal. 298 [5 P.2d 428]; *Texas Co.* v. *Bank of America*, 5 Cal.2d 35 [53 P.2d 127].) Upon a like basis the respondent court's order of April 2, 1942, again denying the petitioner's motion to file a claim of heirship and directing her dismissal from the proceeding was an act in excess of its jurisdiction. Neither of these unauthorized orders was appealable (§ 1240, Prob. Code; *Estate of O'Dea*, 15 Cal.2d 637 [104 P.2d 368]), nor would their review and reversal in the course of an appeal from the decree determining heirship be an *adequate* remedy insofar as permitting the petitioner's exercise of her right to have the merits of her claim submitted to the jury at the same time that the others are heard by that body. Moreover, the hearing of this O'Dea proceeding promises to be a lengthy and tedious affair in view of the numerous claimants involved, and an appeal from the trial court's decision of the

controversy would necessarily entail considerable time and great expense, material burdens which the petitioner should not be required to bear in the enforcement of the substantial right accorded her by statute.

In the circumstances above outlined, where the exercise of judicial discretion is not involved in the matter and the duty of the court to act in .a particular way becomes absolute, the writ of mandate will issue for the relief of the aggrieved party. As is said in 38 Corpus Juris at page 608: ''While as already shown the discretion of the court will not ordinarily be controlled by mandamus, it is not universally true that the writ will not issue to control such discretion or to require a judicial tribunal to act in a particular way. Where the discretion of a court can be legally exercised in only one way, mandamus will lie to compel the court so to exercise it; and in some cases mandamus has been employed to correct the errors of inferior tribunals and to prevent a failure of justice or irreparable injury where there is a clear right, and there is an absence of any other adequate remedy, as for instance where no appeal lies, or where the remedy by appeal is inadequate. It may also be employed to prevent an abuse of discretion, or to correct an arbitrary action which does not amount to the exercise of discretion.'' In support of the text it is sufficient to cite the following well-considered cases: *Golden Gate Tile Co.* v. *Superior Court*, 159 Cal. 474, 482 [114 P. 978]; *In the Matter of Ford*, 160 Cal. 334, 346 [116 P. 757, Ann.Cas. 1912D, 1267, 35 L.R.A. (N.S.) 882]; *Newlands* v. *Superior Court*, 171 Cal. 741, 744 [154 P. 829]; *Sakurai* v. *Superior Court*, 65 Cal.App. 280, 283 [223 P. 575]; *Alexander* v. *Superior Court*, 91 Cal.App. 312 [266 P. 993].

Let a peremptory writ of mandate issue directing the respondent court to permit the petitioner to file her respective statements as to her claim of heirship and to participate in the proceeding to determine who are the rightful heirs of Michael F. O'Dea, deceased, pending in said court.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Peters, J. pro tem., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion and I agree with all of the reasons advanced

in support thereof, but I do not want to be understood as giving even lip service to the unsound decision by the majority of this court in the case of *O'Day* v. *Superior Court,* 18 Cal.2d 540 [116 P.2d 621]. In my opinion, the petitioner in the case at bar stands in the same position as the petitioners in the case last cited and a proper interpretation of sections 1080 to 1082 of the Probate Code compels the conclusion that the orders of July 25, 1939, granting a nonsuit as to the claimants who had appeared and default as to claimants who had not appeared were void. It is obvious that petitioner in the case at bar stands in no different position than petitioners in *O'Day* v. *Superior Court, supra,* as to their second statement of heirship which the trial court refused to permit them to file and this court sustained the ruling of the trial court therein. I took this same position when the petition for writ of mandate was presented to this court on January 27, 1942, in the case of *Thomas J. Mahoney* v. *Superior Court of Los Angeles County,* L. A. No. 18220, and voted for the granting of the writ therein prayed for.