[Civ. No. 10564. First Appellate District, Division Two.—December 27, 1937.]

FRANCES McALLEN, as Administratrix, etc., Appellant, v. A. T. SOUZA, Respondent.

Gerald F. Harrington and Seth E. Tracy for Appellant.

Tinning & De Lap for Respondent.

SPENCE, Acting P. J.—Mary Souza, whose true name was Mary Lucas, died intestate in 1932. Plaintiff was appointed administratrix of her estate and brought this action seeking an accounting of the money and property standing in the name of the defendant and a division of said money and property. The cause was tried by the court sitting without a jury and from a judgment in favor of defendant, plaintiff appeals.

The background of this litigation presents a lengthy and unusual story, but we may briefly outline the more important facts, practically all of which were established by uncontradicted testimony. In 1897, the decedent, who was then the wife of Joseph Lucas and the mother of seven children, left her husband's home, taking with her only her youngest child. Some time thereafter, and in the same year, decedent and defendant started having illicit relations. Defendant was a laborer and farm-hand who traveled from place to place. At the request of decedent, defendant rented a house for decedent in Martinez where she earned money by doing dressmaking. Defendant boarded at said house while he was working in the vicinity. In August, 1898, defendant, who had been away from Martinez for two months working on the Pereira ranch, secured work as a woodchopper on the Sheckler ranch, where he was to live in a cabin. Decedent told defendant that she wanted to accompany him to the Sheckler ranch and live with him. Defendant objected, fearing that there might be trouble, but decedent was insistent. She said, "I no going to cause you no trouble. I go with you. I not interfere with your business. Anything you make is yours and what I make is mine." With this understanding, the parties started to live together in 1898 and continued to live together in an illicit relationship for thirty-four years and until the death of decedent in 1932. Six children were born to these parties while so living together. During that time the parties moved from place to place and finally settled on the Pinole ranch. Defendant accumulated real and personal property during that period which is the subject of this litigation. There was a great deal of testimony regarding the work which decedent had done which appears to have been similar to the work frequently done by the wife of a rancher. In addition to doing dressmaking, decedent did many things about the ranch from which she obtained money

and she put said money in a receptacle. There was testimony to show that this money was used by decedent and the children for various purposes, including household expenses, but defendant denied receiving any part of said money. The property which is involved in this litigation is all property which stood in the name of defendant at the time of the death of decedent.

Before considering the pleadings and findings, it may be stated that this is not a case in which either of the parties believed that the relationship of husband and wife had been established. It is conceded that both knew that decedent was the wife of Joseph Lucas and that no divorce had been obtained. Decedent endeavored to obtain a divorce in 1897 but failed in her attempt and it was not until 1928 that Joseph Lucas initiated a divorce action against decedent which resulted in the entry of a final decree in 1930. Nevertheless, defendant and decedent continued to live together and no marriage ceremony was performed at any time. It may be further noted that even if the parties had entered into a valid marriage in 1897 and had acquired property through their joint efforts during the lifetime of decedent, all of said property would have gone to defendant upon the death of the decedent in the absence of testamentary disposition on the part of decedent. (Probate Code, sec. 201.) Plaintiff therefore has attempted to assert greater rights than those that could have been asserted by her as administratrix in the event that decedent had been the lawful wife of defendant.

The allegations of the first count of the complaint are summarized by plaintiff as follows: "That Mrs. Souza and the respondent had agreed to jointly commingle their earnings, services, and gains and that such property as might be accumulated by them thereafter should be the joint property of the parties, and that all of the property now standing in the name of the respondent belonged jointly to the decedent and the respondent."

The allegations of the second count are summarized by plaintiff as follows: "That Mary Souza was the owner of a full, undivided one-half part, parcel share and interest in all of said real and personal property and prayed for a division of said property."

The trial court found against plaintiff on all of the foregoing allegations. It found that the parties "agreed that they would live together and that any money defendant made

would be his, and that any money Mary Lucas made would be hers''. It further found that it was not true that there was any agreement regarding the commingling of earnings or for the joint ownership of any property which might be acquired. Upon these findings judgment was entered in favor of defendant.

Appellant attacks these findings upon the ground that they ''do not conform to the evidence'', but it is a sufficient answer to state that a review of the record shows that there was ample evidence to support all of the findings made by the trial court.

Appellant's main attack, however, appears to be directed at an alleged error in procedure. A discussion of this attack requires the statement of additional facts. The cause first came on for hearing before Judge McKenzie, before whom it was partly tried. After hearing certain evidence, Judge McKenzie made findings and entered an interlocutory judgment from which defendant appealed. The appeal was dismissed upon the ground that said judgment was not a final judgment and was not one from which an appeal could be taken. (*McAllen* v. *Souza,* 7 Cal. App. (2d) 130 [45 Pac. (2d) 832].) Before the *remittitur* was filed in the trial court, Judge McKenzie died. After the filing of the *remittitur,* defendant made a motion to set aside the interlocutory judgment upon the ground that the cause had been only partly tried by Judge McKenzie before his death, that no final judgment had been entered and that defendant was entitled to have a decision upon all the facts from a judge who had heard all of the evidence. The motion was granted and a trial *de novo* was had before Judge Johnston.

Appellant contends that the trial court erred in setting aside said interlocutory judgment entered by Judge McKenzie, but we find no merit in this contention. We are dealing here with an interlocutory judgment ordering an accounting which differs from certain other types of interlocutory judgments known to the law. The interlocutory judgment here was not final in any sense of the word. It was not appealable (*McAllen* v. *Souza, supra*), it required no findings to support it (*Welch* v. *Alcott,* 185 Cal. 731, 761 [198 Pac. 626]), and any findings or conclusions made at the time of the entry thereof were subject to change or modification at the time of entry of the final judgment. As was said in *Hughes* v. *DeMund,* 96 Cal. App. 365, at page 368 [274 Pac.

405], "An interlocutory decree, in a case such as this, 'is not to be construed as a final determination of the rights of the parties with respect to any of the matters embraced therein'. (Citing cases.)"

In view of the nature of said interlocutory judgment, we are of the opinion that when Judge McKenzie died after the entry thereof but before the entry of the final judgment, the cause stood in the same position as any ordinary action, not involving an interlocutory judgment, in which the trial judge dies or ceases to hold office after partly trying the action but before the entry of the final judgment therein. In such cases it has been held, at least in the absence of consent or waiver, that no other judge may render a valid judgment without a trial *de novo*, for "A party litigant is entitled to a decision upon the facts of his case from the judge who hears the evidence, when the matter is tried without a jury." (*Guardianship of Sullivan*, 143 Cal. 462, 467 [77 Pac. 153] ; see, also, *Connolly* v. *Ashworth*, 98 Cal. 205 [33 Pac. 60].) In *Hughes* v. *DeMund, supra*, at page 368, the court quoted with approval from 33 Corpus Juris, page 973, as follows: "Where a case is tried by the judge, and the issues remain undetermined by him, his successor cannot decide, or make findings in the case, without a trial *de novo*, and consequently he cannot, in such a case, render a valid judgment or decree in the cause, notwithstanding the testimony may have been written down and preserved." The language used in the decisions indicates that the rule applicable to actions generally is likewise applicable to actions where the trial judge may die or cease to hold office after the entry of an interlocutory judgment ordering an accounting but before the entry of final judgment. (*Hughes* v. *DeMund, supra*; *Western Oil etc. Co.* v. *Venago Oil Corp.*, 218 Cal. 733, 747 [24 Pac. (2d) 971, 88 A. L. R. 1271].) Appellant cites and relies upon *DeMund* v. *Superior Court*, 213 Cal. 502 [2 Pac. (2d) 985], but that case is not in point. The interlocutory judgment there was entered by Judge Moncur, who was a duly qualified judge throughout the litigation. The decision upheld Judge Moncur's right to proceed with the trial and enter final judgment despite the intervening actions of Judge Collier. The language and reasoning of that opinion supports the views herein expressed. We therefore conclude that after the death of Judge McKenzie, which occurred prior to the entry of final judgment, no other judge could, in the absence of con-

sent or waiver, proceed with the trial of the cause except upon a trial *de novo* and that the trial court therefore properly granted the motion of respondent to set aside the interlocutory decree which had been entered by Judge McKenzie.

In view of these conclusions, it becomes unnecessary to discuss appellant's claim that there are two sets of findings herein, one made by Judge McKenzie and one made by Judge Johnston, which findings are contradictory on certain issues.

Nor is it necessary to discuss at length appellant's claim that it was an abuse of discretion to refuse permission for the filing of an amended complaint at the close of the trial. Suffice it to state that an examination of the proposed amended pleading and the record herein fails to disclose that there was any abuse of discretion or that appellant suffered any prejudice from the order refusing permission to file the same. Appellant further claims that it was error to refuse to make findings on certain alleged material issues but the trial court was only required to make findings upon the ultimate facts and in our opinion it made findings upon all material issues.

The only remaining contention of appellant is that a resulting trust arose in favor of decedent. We find no merit in this contention. It is somewhat difficult to ascertain the theory upon which appellant bases this contention and a search of the record fails to disclose either evidence or findings which would sustain a judgment in favor of appellant upon the theory of a resulting trust.

The judgment is affirmed.

Goodell, J., *pro tem.*, and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1938.