[Civ. No. 26570.   Second Dist., Div. Two.   Nov. 8, 1962.]

WILLIAM W. BODINE, JR., et al., Petitioners, v. THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent; VAN NESS HOW BATES et al., Real Parties in Interest.

Latham & Watkins and Schramm, Raddue & Seed for Petitioners.

No appearance for Respondent.

Griffith & Thornburgh, Rogers & Wilcox, Ross & Harris and Howard C. Parke for Real Parties in Interest.

ASHBURN, J.—Petition for prohibition against impaneling or employing a jury in the hearing of the second half of a petition for determination of heirship in the Estate of Louise W. How, also known as Louise Bodine How. Alternative writ was issued. We now hold that the peremptory writ should be granted.

Crocker-Anglo National Bank was named executor in Mrs. How's will. Having qualified and the appropriate time for filing petition to determine heirship having arrived, the executor filed such a petition on November 2, 1961 (Prob. Code, § 1080). The will provided: "FIFTH: I give, devise and bequeath all my property of every kind and nature, real, personal and mixed, and wheresoever situated and howsoever held, of which I may die seized or possessed, or in which my estate may have any interest, or over which I may have any power of disposition, to my husband, HAROLD W. How. In the event that my said husband shall predecease me, then I give, devise and bequeath one-half (½) thereof to my heirs-at-law and one-half (½) thereof to the heirs-at-law of my husband, HAROLD W. How, by right of representation." Mrs. How died on October 12, 1960; her husband had predeceased her on September 16, 1960.

The executor's petition named as persons entitled to notice the following: Mrs. Eleanor Gray Perry, sister of Mrs. How; William W. Bodine, Jr., nephew of Mrs. How; Samuel T. Bodine, nephew of Mrs. How; James F. Bodine, nephew of Mrs. How; Mrs. Jane B. Sniffen, niece of Mrs. How; and Ross W. Whistler, first cousin of Harold W. How. It prayed for a determination of the persons entitled to distribution of the estate. The hearing was set for November 20, 1961, on which date the court continued the matter to December 4, 1961, no request or demand for jury or deposit of jury fees having been previously made. On December 4, 1961, the five persons

named in the petition as heirs of Louise W. How (Mrs. Eleanor Gray Perry, William W. Bodine, Jr., Samuel T. Bodine, James F. Bodine, Mrs. Jane B. Sniffen), and Ross W. Whistler who was named as a first cousin of the deceased husband, Harold W. How, had filed statements of their respective claims of interest. All of said claimants were represented by the same attorneys upon the hearing held on December 4, 1961. As the first step in this hearing the attorney for the executor stated: "As I understand the provisions of Probate Code section 1081,[1] this is the type of procedure or proceeding in which a jury trial is required unless all parties waive, and it is the executor's desire to proceed without a jury, and I believe the other parties will stipulate to that." The attorney representing the six claimants then stated: "We so stipulate for the persons for whom we have filed a claim of interest, your Honor."

The hearing then continued and evidence was introduced sufficient to satisfy the judge (Honorable Percy C. Heckendorf) that the five persons above named are the heirs of Mrs. How, but, although considerable time and effort were devoted to the matter, he found it not feasible to then rule upon the question of who were the heirs of the husband, Dr. How; so he rendered an "Interlocutory Decree Determining Heirship" on December 28, 1961, wherein he declared the identity and rights of the persons entitled to share in one-half of the estate as heirs of Mrs. How, but continued the matter for further hearing on January 29, 1962, as to Dr. How's heirs. The interlocutory decree said, in part: "The court reserves at this time, pending the introduction of further evidence, its findings as to the identity of the heirs at law of Harold W. How," and it concluded as follows: "3. The hearing on the Petition for Determination of Heirship insofar as it pertains to the determination of the heirs at law of Harold W. How, deceased, is continued to Monday, January 29, 1962, at 10:00 a. m. before Department Number Three of the above entitled Court, Honorable Percy C. Heckendorf, Judge, presiding."

---

[1] Probate Code § 1081: "At the time appointed, a trial of the facts must be by jury, as in the case of the contest of a will, unless a jury is waived as provided by the Code of Civil Procedure, or unless a jury is not requested and the first day's fees deposited at least five days prior to the date fixed for hearing on the original petition. If the jury is so waived or not so requested and the filing fees so deposited, the court shall hear the petition and any objection thereto that may have been presented, and shall determine who are the heirs of the decedent or entitled to distribution of the estate and shall specify their interests. . . ."

On December 28, 1961, one Van Ness How Bates filed a statement claiming to be an heir of Harold W. How. The matter was continued from January 29, to March 27, 1962; between those dates three more claimants to the Harold W. How share of the estate filed statements of claim. Their attorneys made a motion for a continuance based upon the facts that the new claimants lived in the eastern part of the United States, that only recently they had learned of the pendency of said probate proceedings and had then immediately arranged for representation by counsel, but that it would be necessary for them to have further time in order properly to arrange for the presentation of their case and to bring from great distances necessary and material witnesses and to make available other essential evidence. This motion was granted and the matter was continued to July 17, 1962.

On June 15, 1962, pursuant to a stipulation entered into by (a) the attorneys for Ross Whistler, the only heir of Harold W. How known at the time of the hearing on December 4, 1961; (b) the attorneys for the new claimants, and (c) the attorney for the executor, a pretrial conference was set for June 29, 1962. At that hearing the attorneys for the new claimants without giving any previous notice of motion or making any deposit of jury fees requested trial by jury, the motion was granted by Hon. W. Preston Butcher, judge then presiding, over objection of Ross Whistler's counsel and the clerk was directed to draw a panel therefor.

The petitioners for the writ of prohibition are the five heirs of Louise W. How whose rights were declared in the "Interlocutory Decree" of December 28, 1961, and said Ross Whistler. Petitioners herein are all represented by the same attorneys, and were so represented at the hearing on December 4, 1961, and at the time of the signing of the stipulation for the pretrial conference.

In our opinion there are insuperable obstacles to recognizing a right to jury trial upon the portion of the case which relates to the heirs of Dr. How. We approach the problem first upon the basis that there now is no right to a jury trial regardless of any technical waiver through failure to make seasonal demand and deposit of jury fees.

Summarily stated, our line of reasoning is this. ▪ We here deal with a statutory proceeding in rem which is indivisible and hence there cannot be two separate decrees; the interlocutory judgment made by Judge Heckendorf does not bind him or any other judge to whom the matter may be trans-

ferred; in legal effect it merely records his views as they existed on its date and severs the issues for trial, postponing the determination of the identity of heirs of Dr. How to a later date; but the proceeding must be concluded by Judge Heckendorf and he must make one decree disposing of the entire matter; the findings of a jury upon the Dr. How segment of the case cannot be imposed upon the judge or the objecting claimants, the situation being analogous to bringing in a second judge to go forward with a case previously partially heard by another judge; the belated claim of a right to jury trial does not lie in the mouths of claimants who appeared in the proceeding after entry of the interlocutory judgment; Judge Butcher exceeded his jurisdiction in granting their motion for a jury; as the record shows an existing intention of respondent court to proceed with the further hearing before a jury, the peremptory writ should be granted.

A proceeding for determination of heirship, like all other probate matters, is statutory and jurisdiction depends upon compliance with terms of the statute, primarily the Probate Code. *Estate of Wise,* 34 Cal.2d 376, 381 [210 P.2d 497]: " 'Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. (*Smith* v. *Westerfield,* 88 Cal. 374, 379 [26 P. 206].)' " The *res* is "the right of heirship and distribution" and upon that issue "the decree is binding on the whole world" (*Id.* at p. 384). "Such a proceeding is not an ordinary civil action, but a specialized proceeding in rem." (*Id.* at p. 383.) "So it has been said that such heirship 'decree [is] conclusive against all persons' as the 'basis for the decree of distribution which [is] to follow' (*Estate of Blythe,* 110 Cal. 231, 234 [42 P. 643]); it settles 'the rights of all persons claiming as heirs of the decedent, whether or not they are named in the complaint or personally served with summons' (*Title & Document Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 307 [88 P. 356, 119 Am.St. Rep. 199, 8 L.R.A.N.S 682]) and whether or not they were 'individually named in [the] notice. . . .' (*Estate of Blythe, supra,* 110 Cal. 231, 233; see also 11B Cal. Jur. § 1200, p. 671; § 1205, p. 676; § 1208, pp. 680-681.) The decree is not one '*in personam* in favor of one of the parties against another.' (*Edlund* v. *Superior Court,* 209 Cal. 690, 695 [289 P. 841].)

Rather, as founded in a specialized proceeding in rem—'not against persons as such, but against or upon the thing or subject matter itself'—the decree, when rendered, 'is a solemn declaration of the status of the thing, and ipso facto renders it what the [decree] declares it to be.' (11A Cal. Jur. § 73, p. 135, and cases there cited.)'' (*Id.* at p. 385.) The decree operates as res judicata, as a ''valid adjudication finally settling the disputed distributive rights in the [particular] estate and precludes further litigation of the issues there determined.'' (*Id.* at p. 386.)

*Estate of Radovich,* 48 Cal.2d 116, 121 [308 P.2d 14] : '' 'By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him, '' 'subject only to be[ing] reversed, set aside, or modified on appeal.' '' The decree is as binding upon him if he fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court.' ''

*In re Burton,* 93 Cal. 459, 464 [29 P. 36] : ''It is true, however, that in special proceedings the court must exercise its jurisdiction, substantially at least, in the mode prescribed by the statute authorizing the proceeding.'' (See also *Woods* v. *Security-First Nat. Bank,* 46 Cal.2d 697, 703-704 [299 P.2d 657] ; *Bales* v. *Superior Court,* 21 Cal.2d 17, 24 [129 P.2d 685] ; *Estate of Caswell,* 152 Cal.App.2d 195, 196 [312 P.2d 703] ; *Estate of Winnie,* 175 Cal.App.2d 698, 703 [346 P.2d 856] ; *Stevens* v. *Torregano,* 192 Cal.App.2d 105, 114 [13 Cal. Rptr. 604].)

When the personal representative is petitioner for determination of heirship he represents all parties in interest (*Estate of Barber,* 49 Cal.2d 112, 119 [315 P.2d 317] ; *Estate of Lynn,* 109 Cal.App.2d 468, 473 [240 P.2d 1001] ), at least those who do not appear and assert their own interests. Speaking of the predecessor of Probate Code section 1080, *Blythe* v. *Ayres,* 102 Cal. 254, 258 [36 P. 522], says: ''Section 1664 was clearly intended to provide the means by which, where there are hostile claimants to an estate, *all* the conflicting rights thereto may be summarily and finally determined in *one proceeding.* (*In re Burton,* 93 Cal. 459, 461 [29 P. 36].)'' (Italics by the court.) This is but another way of

saying that an heirship proceeding, being in rem, concludes all claimants who do not appear as well as those who enter into a contest of the matter.

The Probate Code contains no authority for severance of such a proceeding which essentially is a single unit, and it follows that there is none unless it be through incorporation by reference of certain provisions of the Code of Civil Procedure. Section 1081, Probate Code, says: ''. . . In any such trial the rules of procedure shall be those of the Code of Civil Procedure. . . .'' Section 1233: ''Except as otherwise provided by this code or by rules adopted by the Judicial Council, the provisions of Part 2 of the Code of Civil Procedure are applicable to and constitute the rules of practice in the proceedings mentioned in this code with regard to trials, new trials, appeals, and all other matters of procedure. . . .''

Turning to the Code of Civil Procedure we find that section 1048 provides: ''An action may be severed and actions may be consolidated, in the discretion of the court, whenever it can be done *without prejudice to a substantial right.*'' (Emphasis added.) This section must be read in conjunction with section 579: ''In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, *whenever a several judgment is proper.*'' (Emphasis added.)[2] Severance connotes division of a single action into two or more separate and distinct actions with consequent separate judgments. (1 C.J.S. § 117, p. 1379.) The concluding phrase of section 579, ''whenever a several judgment is proper'' directs attention to the case law as well as any other statutes.

It is well settled that there can be but one final judgment between two parties or sets of parties in an action or proceeding except as otherwise provided by statute. *Nicholson* v. *Henderson,* 25 Cal.2d 375, 378 [153 P.2d 945]: ''It is settled that as a general rule there can be only one final judgment in a single action. [Citations.] There are at least two exceptions to this general rule, instances of which are to be found in two of the cases just cited: *Rowley* v. *Davis,* 169 Cal. 678 [147 P. 958], *supra,* and *Howe* v. *Key System Transit Co.,* 198 Cal. 525 [246 P. 39], *supra.*'' At page 381: ''To attempt to adjudicate the rights of one party by a single judgment and those of the other by a separate judgment when the

[2]Actually, § 579 like § 578 relates only to ''several defendants,'' meaning severally liable in contrast to § 414 which refers to defendants jointly and severally liable.

controversy is between only two parties and concerns but one subject matter—a single piece of real property—is simply an attempt to dispose of the case piecemeal, a procedure which has been condemned by this court in numerous decisions as will be found in the cases of *Mather* v. *Mather*, 5 Cal.2d 617 [55 P.2d 1174], *supra*, and *Greenfield* v. *Mather*, 14 Cal.2d 228 [93 P.2d 100], *supra*. In these cases and the authorities cited therein, it was held, on an appeal from one such judgment, that 'It is at once apparent that no *final* judgment was entered in the action . . . under the terms of section 963 of the Code of Civil Procedure, or otherwise. . . . The motion [to dismiss the appeal] is granted and the purported appeal is dismissed.' (5 Cal.2d 618.)'' Accord: *Bank of America* v. *Superior Court*, 20 Cal.2d 697, 701 [128 P.2d 357]; *Mather* v. *Mather*, 5 Cal.2d 617, 618 [55 P.2d 1174]; *Murphy* v. *Fong Shuck*, 151 Cal.App.2d 64, 69 [311 P.2d 80]; 3 Cal.Jur.2d § 40, pp. 457-458; 28 Cal.Jur.2d § 73, p. 707. While a cause may proceed to separate judgments against persons who are severally and personally liable, as in a personal injury action, we have been cited no authority for a severance of an action in rem so as to try different parts of the res at different times and before different judges or juries, and we know of no such authority. That would be inconsistent with the nature of the proceeding for the judgment binds the world as to the status of the *res* which is before the court. (50 C.J.S. § 910, p. 553.)

We are satisfied that there can be but one judgment in a rem action. But Judge Heckendorf made no attempt at severance except in the sense of segregating the issues for trial at different times. (Ballentine's Law Dictionary, p. 1193.)

The minute order of December 4, 1961, says: ''It is ordered by the Court that the Petition to Determine Heirship, be, and the same is hereby granted as to the heirs-at-law of Mrs. Louise W. How. It is further ordered by the Court that the Petition to Determine Heirship as to the heirs-at-law of Harold W. How, be, and the same is hereby continued until January 29, 1962 at 10:00 a.m.'' The interlocutory decree has been quoted *supra*. Clearly this determination of the order and times of proof was a matter for the judge's discretion. (Code Civ. Proc., § 187.)[3]

The making of the interlocutory decree really adjudged

---

[3]Code Civ. Proc., section 187: ''When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not

nothing; such is the rule as to any case other than one where the entry of such a decree is specifically authorized, as in divorce, eminent domain or partition. *McAllen* v. *Souza,* 24 Cal.App.2d 247, 250 [74 P.2d 853] : ''We are dealing here with an interlocutory judgment ordering an accounting which differs from certain other types of interlocutory judgments known to the law. The interlocutory judgment here was not final in any sense of the word. It was not appealable (*McAllen* v. *Souza, supra* [7 Cal.App.2d 130 (45 P.2d 832)]), it required no findings to support it (*Welch* v. *Alcott,* 185 Cal. 731, 761 [198 P. 626]), and any findings or conclusions made at the time of the entry thereof were subject to change or modification at the time of entry of the final judgment. As was said in *Hughes* v. *DeMund,* 96 Cal.App. 365, at page 368 [274 P. 405], 'An interlocutory decree, in a case such as this, ''is not to be construed as a final determination of the rights of the parties with respect to any of the matters embraced therein.'' [Citing cases.]' '' To same effect see, *Solorza* v. *Park Water Co.,* 94 Cal.App.2d 818, 821 [211 P.2d 891] ; *David* v. *Goodman,* 114 Cal.App.2d 571, 576 [250 P.2d 704] ; *DeMund* v. *Superior Court,* 213 Cal. 502, 506 [2 P.2d 985] ; *Wilson* v. *First Nat. Trust & Sav. Bank,* 73 Cal.App.2d 446, 449-450 [166 P.2d 593].

The *Wilson* case was an action for declaratory judgment brought by a beneficiary against the trustee of an express trust. The case was initially heard by Judge Gould who entered an interlocutory decree in favor of plaintiff; the action was later tried de novo by Judge Burnell who rendered judgment for defendant. This court held that the Gould judgment was in fact interlocutory and then said: ''Therefore it has become the law of the case that such judgment was an interlocutory judgment, and after Judge Burnell retried the action de novo, as it was his duty to do in view of the decision in *Hughes* v. *DeMund,* 96 Cal.App. 365, 368 [274 P. 405], Judge Gould's interlocutory judgment became of no force or effect. Hence there is no merit in appellant's contention that the interlocutory judgment of Judge Gould is res judicata of facts subsequently found by Judge Burnell.'' (Pp. 449-450.)

It thus becomes apparent that the present posture of the instant proceeding is that all issues are open for further adjudication by the judge who rendered the interlocutory

specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.''

decree or after a trial de novo in the event that the cause now goes to another judge. But the cited case of *Hughes* v. *DeMund*, 96 Cal.App. 365, 368 [274 P. 405], holds: "In the absence of consent or waiver, it was error for Judge Collier to make findings and decide material issues from the evidence introduced before Judge Moncur. 'A party litigant is entitled to a decision upon the facts of his case from the judge who hears the evidence, where the matter is tried without a jury.' (*Guardianship of Sullivan*, 143 Cal. 462, 467 [77 P. 153].) 'Where a case is tried by the judge, and the issues remain undetermined by him, his successor cannot decide, or make findings in the case, without a trial *de novo,* and consequently he cannot, in such a case, render a valid judgment or decree in the cause, notwithstanding the testimony may have been written down and preserved.' (33 C.J. 973.)'" In that case Judge Collier had stepped into a case in which Judge Moncur had heard evidence and entered an interlocutory decree. Judge Collier took additional evidence and read the transcript of the hearing held by Judge Moncur and then rendered judgment which was reversed for the nonobservance of the rule stated in the foregoing quotation. The other cases last cited presented similar situations and it was consistently held that a party is entitled to a trial of his entire case by the judge who started the hearing of evidence and that a substitute judge cannot act in such circumstances. It follows that further proceedings in the matter before us must be conducted by Judge Heckendorf. Whether the judgment of a jury as to the identity of heirs of Dr. How can be substituted for that of Judge Heckendorf is the ultimate question presented by the instant petition. Additional cases closely akin to this one are the following: *Guardianship of Sullivan,* 143 Cal. 462, 467 [77 P. 153] ; *City of Long Beach* v. *Wright,* 134 Cal.App. 366, 370 [25 P.2d 541] ; *In re Williams,* 52 Cal.App. 566, 569-571 [199 P. 347] ; *Reimer* v. *Firpo,* 94 Cal.App.2d 798, 801 [212 P.2d 23] ; *Perez* v. *Perez,* 111 Cal.App.2d 827, 829 [245 P.2d 344] ; *Ross* v. *Murphy,* 113 Cal.App.2d 453, 454 [248 P.2d 122] ; *David* v. *Goodman, supra,* 114 Cal.App.2d 571, 574-577 ; *Fox* v. *Fox,* 127 Cal.App.2d 253, 255 [273 P.2d 585].

*Guardianship of Sullivan, supra,* phrases the rule as follows: "A party litigant is entitled to a decision upon the facts of his case from the judge who hears the evidence, where the matter is tried without a jury, and from the jury that hears the evidence, where it is tried with a jury. He cannot be compelled to accept a decision upon the facts from another

judge or another jury." (P. 467.) The *Reimer, Perez* and *Fox* cases quote and follow this same rule, that no litigant can "be compelled to accept a decision upon the facts from another judge or another jury." If one judge cannot be substituted for another or a second jury for a first one, by what line of reasoning can the judgment of a jury be substituted (over objection) for that of the trial judge who has heard part of the evidence?

Also persuasive to the effect that a jury cannot take over from a judge in the midst of a trial are *Swift* v. *Superior Court,* 39 Cal.2d 358, 363-364 [247 P.2d 6] and *Estate of Black,* 199 Cal. 257, 262 [248 P. 1015].

*Swift* dealt with the procedure to be followed upon a contest of a will before probate,—whether the petition for probate should be heard first by the judge and then the contest be heard by the jury. At page 363 the court said: "If the trial court, in its discretion, is allowed to proceed with the hearing of the preliminary proof in support of the petition for probate in the absence of a jury, two separate proceedings will necessarily result. It will then frequently happen that evidence introduced by the proponents upon the hearing of the preliminary proof before the court alone will have to be repeated before the jury, as such evidence is often material in the consideration of the issues raised by the contest.

"On the other hand, nothing is to be gained in leaving to the trial court's discretion the determination that the contest be tried before the hearing of the preliminary proof. If this procedure is followed, the situation may arise where the jury will find for the proponents on the issues raised by the contest, while the trial court might thereafter conclude that a material matter, not placed in issue by the contest, is not established on the hearing of evidence supporting the petition for probate. These considerations clearly indicate that the interrelated proceedings must be heard at the same time.

"In the interest of establishing a definite rule of procedure to be followed under such circumstances, we believe that it is appropriate for this court to declare that when a will is contested before probate and either party demands a jury trial of any issue as to which the right to a jury trial exists (Prob. Code, § 371) the trial court cannot proceed with any phase of the hearing in the absence of a jury but must impanel a jury at the outset."

*Estate of Black, supra,* was another contest of a will before

probate. Stating the rule which was later applied in *Swift,* the court said at page 262: "It may also not be amiss to point out that if the two proceedings be deemed to be two separate trials an anomalous situation may well arise. Upon the contest of the will the determination of the issues is for the jury if a jury is demanded. Upon the hearing of the petition for the probate of the will, the determination of the issues is for the court alone. (*Estate of Relph, supra.*) It might well happen that if the hearing of the contest precede the hearing of the petition for probate the jury, upon the trial of the contest, upon a conflict in evidence might bring in a verdict upholding the validity of the will and the court upon the hearing of the petition for probate upon the same issue involved in the contest arrive at a diametrically opposite conclusion. A deadlock as to the admission to probate of the will would be inevitable."

*Estate of Buchman,* 132 Cal.App.2d 81 [281 P.2d 608, 53 A.L.R.2d 451], is also persuasive. It involved an appeal from decree of partial distribution and order settling executor's accounts. "Appellant also seeks review of the order vacating the setting of his petition to determine heirship, contending he was thereby denied a trial by jury to which he was entitled by section 1081 of the Probate Code. He also assigns as error the court's ruling in denying his motion to be relieved from waiver of a jury trial in the hearing of respondent's petition for partial distribution. In brief recapitulation of the events leading up to these rulings, respondent filed her petition for partial distribution on January 26, 1953. Appellant filed his answer thereto on February 13, 1953." (P. 100.) This and other matters were continued to April 6, 1953. On April 2 appellant filed a petition for determination of heirship and prayed for jury trial. "This was 65 days after service of citation on him of respondent's petition for partial distribution, 48 days after the matter was first set for trial, and about three weeks after the hearing had commenced and stipulations made as to the conduct of the proceedings." (P. 100.) The petition for partial distribution and answer thereto embraced all the issues involved in the heirship proceeding. "In proceedings for partial distribution, either party has a right to demand a trial by jury of any issues of fact raised therein. [Citations.] From the record, it is clear that appellant's former counsel waived any right to a trial by jury by failing to demand a jury 'at the time the cause is first set upon the trial calendar if it be set upon notice or stipulation, or within five days after notice of setting if it be set without notice or stipulation . . .'

[Citations.] As late as March 11th, the record is clear that appellant was prepared to proceed without a jury and that this waiver of jury had been consciously and deliberately effected. *The belated interjection of appellant's petition to determine heirship coupled with a demand for a jury trial (Prob. Code, §§ 1080-1081) did not compel a suspension of the proceedings and a trial of the matter by jury thereafter.* [Citation.]'' (P. 101.) (Emphasis added.)

The record herein shows that at the hearing of December 4, 1961, before Judge Heckendorf, the subject of identity of the heirs of Dr. How consumed about 20 pages of a reporter's transcript of 40 pages—the producing of evidence and declaring the difficulties the executor had had in ascertaining who are the heirs and assembling proofs of the pertinent facts. At the pretrial hearing of June 29, 1962, counsel for the Grangers (late-comers) declared his intention to move at the next hearing for an order striking all of said evidence concerning the heirs of Dr. How. Mr. Schramm, attorney for the Bodines and Whistler, told the court that extensive evidence on the subject had been received. Mr. Rogers, attorney for the executor, said: ''Evidence—you see, as I said, this is a very involved family tree relationship. There was evidence given at the time of that hearing with regard to the heirs of Doctor How, relative to the very question that is now before the Court, as far as the executor had been able to determine the facts of the family relationship as related to Doctor How, after the introduction and, as Mr. Schramm said, there was also some evidence given as to the—as to the matters which came up at the time of the execution of the will. The Order of Judge Heckendorf, if the Court will notice it, says that as to the determination of heirship, so far as Doctor How is concerned, it is continued for the taking of further evidence. THE COURT: But they did take evidence. MR. ROGERS: Oh, this was taken, yes. THE COURT: I didn't know that. On the original petition, was evidence taken on that subject? MR. ROGERS: Very definitely, sir.'' ''MR. SCHRAMM: Your Honor, this case is [*sic*] not only proceeded to the point where it is being set for trial, this case is in the middle of a trial. I would suggest to the Court that this Court has no authority, and if it had authority it would be making the gravest sort of an error to interrupt a trial before the Court.''

Section 1081, Probate Code, concludes with this language: ''Any claimant entering or re-entering such proceedings shall be bound by evidence introduced and depositions

taken prior to his entry into the proceedings or during his absence therefrom, except that he may in the discretion of the court have the right to examine any witness further if it be possible so to do.'' This does not contemplate that the whole hearing shall be opened at the instance of any newcomer but impliedly says that he shall take the proceeding as he finds it.

All claimants who were in the case at the time of the December 4th hearing expressly waived jury trial, and in our opinion the claimants who later entered the case did not have any right to a jury trial. This concluding sentence of section 1081 qualifies the earlier declaration of a right to a jury trial.

*Bales* v. *Superior Court,* 21 Cal.2d 17 [129 P.2d 685], is not opposed to the foregoing views. That was a proceeding in mandamus to compel the court to permit a late-comer to participate in a pending proceeding to determine heirship. Her attempted appearance had been stricken below and this was held a violation of section 1080, Probate Code, going to the jurisdiction. The court said, *arguendo,* at page 23: ''[S]ection 1081 of the Probate Code, relating to the conduct of the hearing in an heirship proceeding, provides that 'at the time appointed, *a trial of the facts* must be by jury, as in the case of the contest of a will, unless a jury is waived. . . .' (Italics added.) Since the very nature of this latter litigation fixes the determination of the alleged existence of relationship borne by the claimant to the deceased to be the controlling factor, section 1081 must be construed as giving to every such claimant, whether upon initiating petition or statement of heirship presented after the commencement of the proceeding, the right to have all evidence affecting the disposition of this single, ultimate issue submitted to the jury for its consideration. Consistent with this requirement of section 1081 and the scheduled impanelment of a jury for the trial of the facts in the O'Dea heirship proceeding, it is manifest that the respondent court, in passing upon the merits of the petitioner's claim incidental to its order dismissing her from the proceeding, usurped the functions of the jury.'' It is to be noted that no partial hearing upon the merits had been had prior to the ruling upon the mandamus. Therein lies a differentiation between that case and the one at bar in a vitally important respect.

Nor do we consider *Estate of Nuttle,* 3 Cal.App.2d 415 [39 P.2d 475], to be a controlling precedent.[4] It involved a petition

---

[4]Apparently it was decided by the then presiding justice of this division and an unidentified pro tempore justice. The record is not clear in this respect.

to determine heirship of a particular asset of the estate, namely, $22,000 face value of government bonds and treasury notes; apparently no other portion of the estate was in dispute. When the court said, "[w]e do not feel, however, that this or other claimed deficiencies in the order furnish ground for reversal, since the way is still open to any interested party to file another petition to determine heirship and to specify interests not heretofore passed upon" (p. 419), it doubtless was expressing the view that one heirship proceeding may be directed to a certain portion of the estate and another petition to a separate asset of the estate. This view does not square with the authorities above cited, most of which are later cases. The point is not elucidated by the court through any further discussion and as it is a decision of this division of this court we now disapprove it with respect to the sentence last above quoted.

Viewing the matter from the standpoint of waiver, section 1081, Probate Code requires a request for a jury and deposit of the first day's fees "at least five days prior to the date fixed for hearing *on the original petition.*" (Emphasis added.) That hearing was held on December 4, 1961, and the motion for jury trial was first made on June 29, 1962, without giving of any previous notice; Van Ness How Bates had filed his claim on December 28, 1961, and the Grangers on March 14, 1962. Judge Butcher, although no previous notice of motion for relief under section 473, Code of Civil Procedure had been given, and no affidavit or other evidence was submitted in support of the motion, and though the statutory limit of six months had long since expired, relieved said claimants from default and granted their oral motion for a jury trial. The judge's remarks made in that connection reflect a state of dubiety which was solved in the following manner: "Therefore, since I have refused to predetermine whether there is to be a question of fact on this question of whether the will is uncertain or ambiguous, that they want to reserve their right to a jury trial if the question of fact is raised, and will require parol or extrinsic evidence to prove the true intent of the testator. Upon that fact you wish a jury trial, is that true? MR. HARRIS: That is correct, your Honor. THE COURT: That is your contention, Mr. Thornburgh? MR. THORNBURGH: That is correct, your Honor. THE COURT: Now, I believe you know all of the circumstances and the broad discretion of the Court, and because a jury trial is otherwise mandatory, that I am going

to permit the parties to this proceeding to reserve at least their right to demand a jury trial. And do you make the demand at this time? MR. THORNBURGH: Yes, your Honor, we do. THE COURT: Well, the demand will be noted in the Pre-Trial Order and a jury trial will be permitted, unless otherwise waived. . . . MR. SCHRAMM: I direct your attention to the transcript. These very matters of fact which counsel now suggests they didn't know were injected in the case and were in part tried. THE COURT: Yes, but Judge Heckendorf opened the door again when he said this matter would be continued to January 29th as to Mr. How's interest, when the executor may develop or ferret out some other claimants, indicating by implication that if they did find other heir claimants that then the matter would be tried entirely anew. MR. SCHRAMM: Oh, your Honor, the statute forbids it. People who came into the case are bound by the prior testimony. THE COURT: Not as to the right as to a jury trial. I am holding that they have that right. It is a right that is guaranteed that [sic] these people, and I am relieving them, and it will be upon the express ground that they are relieved from any default in that matter. If I am wrong you can bring out a writ of Prohibition. Test it, Mr. Schramm; but that is my ruling.''

Although the case has been set for further hearing in Judge Heckendorf's department of the court the petition alleges: ''That the said Superior Court of the State of California in and for the County of Santa Barbara, has threatened to, and indeed, categorically stated that it intends to, impanel a jury to sit on the further trial of the issue on said Petition for Determination of Heirship now set for the 17th day of July, 1962, et seq., and submit the cause to said jury as the trier of fact, to return a verdict thereon, and said Court will proceed so to do unless restrained and prohibited from so doing by an order of this Court.'' Respondent superior court has made no return to the writ; real parties in interest, Granger, appeared by demurrer and Van Ness How Bates by demurrer and answer. Nothing was said at the time of oral argument about a reference or other trial of issues of fact and the record is in such state that we must accept as true the averment that the court will impanel a jury and submit the further evidence to it. (Cf. *Mash* v. *Superior Court,* 192 Cal. 258, 262 [219 P. 742].)

The prayer of the petition is for a writ forever restraining respondent court ''from taking any further proceedings to impanel a jury, or to permit a jury, as trier of fact, to sit in

further trial upon the said Petition for Determination of Heirship."

Let the peremptory writ issue as prayed.

Fox, P. J., and Herndon, J., concurred.