540 P.2d 254

Clair MILLER and James Thomas Inc.,
a New Mexico Corporation, Appellees,

and

Albuquerque Home Builders Association,
Appellee,

v.

CITY OF ALBUQUERQUE, a Municipal
Corporation, the City Commission of the
City of Albuquerque, and the Environmental Planning Commission of the City of Albuquerque, Appellants.

No. 1721.

Court of Appeals of New Mexico.

Aug. 6, 1975.

Certiorari Denied Sept. 3, 1975.

Briggs F. Cheney, Toulouse, Krehbiel & Cheney, P. A., Albuquerque, for appellants.

Gene C. Walton, Rodey, Dickason, Sloan, Akin & Robb, P. A., Terrance L. Dolan, Albuquerque, for appellees.

## OPINION

WOOD, Chief Judge.

Judge M. Sanchez held Thompson (Attorney James M. Thompson, Assistant City Attorney) in contempt of court. Subsequently Judge M. Sanchez ordered Thompson and the City (City of Albuquerque) to pay certain attorney fees to plaintiffs. The appeal involves the propriety of these two orders. There are five issues: (1) the subject matter jurisdiction of this Court; (2) the appealability of certain orders; (3) the authority of Judge M. Sanchez to enter the orders; (4) the factual basis for the contempt order; and (5) an asserted abuse of discretion in entering both orders.

*Subject Matter Jurisdiction*

Thompson was held in civil contempt for failing to produce witnesses for depositions pursuant to court order. Thompson and the City were ordered to pay attorney fees for refusing to permit discovery. Thompson and the City appeal.

Plaintiffs moved that we transfer Thompson's appeal to the Supreme Court.

Section 16-7-8, N.M.S.A.1953 (Repl.Vol. 4) gives this Court subject matter jurisdiction on appeal in any civil action which includes a count in which one or more parties seek damages on an issue based on tort. Among other claims, plaintiffs sought damages on the basis of asserted "illegal and negligent" actions on the part of defendants. This Court had subject matter jurisdiction of Thompson's appeal. The motion to transfer was properly denied. See *Measday v. Sweazea*, 78 N.M. 781, 438 P.2d 525, 26 A.L.R.3d 1386 (Ct. App.1968); compare *State v. Watson*, 82 N.M. 769, 487 P.2d 197 (Ct.App.1971).

*Appealability of Certain Orders*

Defendants moved to dismiss plaintiffs' complaint. This motion was argued before Judge Payne. At the conclusion of the motion hearing, Judge Payne directed that counsel submit briefs on three specified legal issues. Judge Payne orally ordered "that any depositions will be held in abeyance pending a determination of these issues." Subsequently, by letter, Judge Payne advised counsel that the motion to dismiss would be denied. The letter directed the preparation of "appropriate orders". Before a formal order was entered, Judge Payne left the state to attend a judicial conference. In Judge Payne's absence, Judge M. Sanchez signed an order denying the motion to dismiss. This order is consistent with Judge Payne's letter.

On the same day that the order denying the motion to dismiss was signed, Judge M. Sanchez orally directed that previously noticed depositions should proceed to be taken. The formal order in connection with the depositions was signed by Judge R. Sanchez in the absence of Judge M. Sanchez. The record is to the effect that the order signed by Judge R. Sanchez was in accord with Judge M. Sanchez' oral ruling.

Thompson and the City did not comply with the order to proceed with the depositions. After various hearings before district judges, Judge M. Sanchez entered an order directing that specified depositions be taken or in the alternative, Thompson

was to show cause why he should not be held in contempt. The result was an order holding Thompson in contempt of court. After proceedings in the Supreme Court were dismissed, an order was entered requiring Thompson and the City to pay certain attorney fees.

On appeal Thompson and the City argue the validity of three orders. This issue is concerned with the appealability of those orders.

■ The order holding Thompson in civil contempt is appealable under § 21–12–3(a)(4), N.M.S.A.1953 (Int.Supp.1974).

■ The order in connection with attorney fees holds Thompson and the City "jointly and severally" liable. Thompson is not a party in the main action. The proceeding against Thompson is independent of the main action. Insofar as this order pertains to Thompson, it is a final judgment appealable under § 21–12–3(a)(1), supra. However, the City is a party to the main action. No final judgment has been entered against the City in the main action. Nor have all issues been decided against the City in the main action. See § 21–1–1(54)(b), N.M.S.A.1953 (Repl. Vol. 4, Supp.1973). Insofar as this order pertains to the City, it cannot be considered an appealable order unless the order against the City is also viewed as having been entered in a proceeding independent of the main action. Because the order is joint and several, the order against the City should be viewed the same as the order against Thompson. We hold it appealable on the same basis as the order against Thompson is appealable.

■ The third order is the one entered by Judge M. Sanchez denying the motion to dismiss. This order does not contain the requisite finding on which to base an application for an interlocutory appeal under § 21–10–3, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973). Thompson and the City have consistently taken the position that a decision whether to make the requisite finding should only have been made by Judge Payne and could not have properly been made by Judge M. Sanchez. This is not an issue in the appeal because the order denying the motion to dismiss is not an appealable order.

The order denying the motion to dismiss is a part of the main action. No final judgment has been entered and no interlocutory order has been entered which practically disposes of the merits. Section 21–12–3, supra.

Accordingly, the issues in this appeal are limited to the contempt order and the order concerning attorney fees.

*Authority of Judge M. Sanchez to Enter the Orders*

The validity of the two orders involved in this appeal depends upon the authority of Judge M. Sanchez to order that discovery proceed. The claim is that Judge M. Sanchez lacked authority to do so. The contention is that the judge first acquiring jurisdiction retains it to the exclusion of all others of coordinate position; that interference between judges of different divisions of the same court should not be tolerated.

Judge Payne and Judge M. Sanchez are judges of the same court. See *State v. Peters*, 69 N.M. 302, 366 P.2d 148 (1961), cert. denied, 369 U.S. 831 (1962). The judges hold coordinate positions. Section 16–3–5(B), N.M.S.A.1953 (Repl.Vol. 4) provides: "All judges of a judicial district have equal judicial authority, rank and precedence * * *."

■ We do not agree that Judge M. Sanchez interfered with Judge Payne's ruling concerning discovery. Judge Payne orally stayed the taking of depositions pending a determination of the motion to dismiss. Judge Payne's letter stated the motion to dismiss would be denied. It was subsequent to this letter that Judge M. Sanchez ordered discovery to proceed.

Even though no interference is shown by the record, Thompson and the City claim Judge M. Sanchez had no authority to enter any order in the case because Judge

Payne first acquired jurisdiction in the case. This claim is too broad. Our concern is with Judge M. Sanchez' authority to enter orders concerning discovery. Even with the issue limited to the authority of Judge M. Sanchez to enter orders directed to discovery, the claim is that Judge M. Sanchez lacked authority. The cases on which Thompson and the City rely are not in point because they are concerned with the authority of a second judge to enter an order after an evidentiary hearing was held by the first judge. See *Clanton v. Ryan*, 14 Colo. 419, 24 P. 258 (1890); *McAllen v. Souza,* 24 Cal.App.2d 247, 74 P.2d 853 (1937); *Slaven v. Slaven,* 22 Ohio Op. 230, 35 Ohio L.Abs. 268 (C.P. 1941). No evidentiary hearing had been held in this case.

Judge Payne's oral order staying discovery until the motion to dismiss had been decided was an interlocutory order. Thus we are not concerned with the authority of a judge of concurrent jurisdiction to modify final orders of another judge. "The only restraint upon a second judge in passing upon an interlocutory issue decided by another judge in the same case is one of comity only, which in no way infringes upon the power of the second judge to act." *Bowles v. Wilke*, 175 F.2d 35 (7th Cir. 1949), cert. denied, 338 U.S. 861, 70 S.Ct. 104, 94 L.Ed. 528 (1949). See also, *Brande v. S. & S. Machinery ·Co.,* 252 F.2d 297 (2d Cir. 1958); *Graci v. United States,* 301 F.Supp. 947 (E.D.La.1969), aff'd 456 F.2d 20 (5th Cir. 1971); *Shawmut, Inc. v. American Viscose Corp.,* 11 F.R.D. 562 (S.D.N.Y.1951); *Lane v. Clein,* 137 So.2d 15 (Fla.App.1962); *People v. Doherty,* 192 N.Y.S.2d 140 (S.Ct.1959); compare In re *Zuber's Estate,* 24 Misc.2d 579, 202 N.Y.S.2d 931 (S.Ct.1960); *Topping v. North Carolina State Board of Education,* 249 N.C. 291, 106 S.E.2d 502 (1959).

■ Judge Payne's prior oral interlocutory order concerning depositions did not divest Judge M. Sanchez of authority to enter a subsequent interlocutory order concerning depositions in the same case.

Judge M. Sanchez had authority as a judge of the district court to enter the orders concerning depositions and thus had authority to enter orders imposing sanctions when his discovery orders were violated.

*Factual Basis for the Contempt Order*

Thompson was held in contempt "for having failed to produce witnesses pursuant to proper notice and Court Order." The order gives Thompson the opportunity to purge himself of the contempt by producing the witnesses. Thompson was directed to pay $50.00 daily to the court clerk for each day he was in noncompliance with the requirement that witnesses be produced for the taking of their depositions.

Thompson cites cases to the effect that one charged with contempt for failure to comply with a court order makes a complete defense by showing that he is unable to comply. See *McPhaul v. United States*, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960); *United States v. Bryan,* 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950). Thompson claims he was unable to comply with the orders of Judge M. Sanchez to produce witnesses.

We do not concern ourselves with the various aspects of the legal rule relied on by Thompson. We do not do so because of the absence of a factual predicate for application of the rule.

■ Thompson's position is that he had no control over the deponents and that the City's administrative officer had directed the deponents not to appear. This is factually incorrect. The record shows the administrative officer directed the deponents to comply with the directions of Thompson " 'with regard to attendance or nonattendance.' "

*Asserted Abuse of Discretion in Entering the Orders*

■ Thompson and the City contend generally that the contempt order was an abuse of discretion. The record is clear that Thompson violated the orders of Judge M. Sanchez to produce the witnesses

when depositions had been scheduled. There is nothing showing an abuse of discretion. Compare *Beverly v. Conquistadores, Inc.* (Utah Ct.App.), 537 P.2d 1015, 1975.

Specific claims of an abuse of discretion are directed to the order concerning attorney fees. This order found a willful refusal to permit discovery "without substantial justification despite proper notice, subpoena and Court orders with regard to discovery." The order required reimbursement of plaintiffs "for attorney fees incurred to date with regard to all proceedings at the District Court level with regard to orders compelling discovery and the enforcement thereof * * *." The order also required payment of attorney fees incurred in taking the deposition of Garcia and attorney fees to be incurred in the future in taking three additional depositions.

The specific claims made, and our answers follow:

1. The attorney fee order is an abuse of discretion because it is punitive in nature. Thompson and the City point out that Thompson's contempt was civil, that the primary purpose of the contempt order was to provide a remedy for plaintiffs by coercing compliance with the orders of Judge M. Sanchez in regard to discovery. See *State v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957). Thompson and the City recognize that civil contempt may also be employed to compensate the plaintiffs for losses sustained. See *State v. Our Chapel of Memories of New Mexico, Inc.,* 74 N. M. 201, 392 P.2d 347 (1964).

Thompson and the City argue that the order concerning attorney fees went beyond compensation to plaintiffs. They assert the order went beyond the actual losses sustained by plaintiffs as a result of Thompson's noncompliance with court orders concerning discovery and thus became punitive rather than remedial.

The basis for this contention is that the order concerning attorney fees "represents nothing more than a modification of the * * * contempt order." This is factually incorrect. At the hearing in connection with this order, plaintiffs sought attorney fees on the basis of § 21–1–1(37), N.M.S. A.1953 (Repl.Vol. 4). At that hearing Judge M. Sanchez pointed out that the contempt order had been appealed and it was beyond the jurisdiction of the district court to modify the contempt order.

The record shows the order concerning attorney fees was separate and distinct from the contempt order. Accordingly, there is no basis for holding the attorney fee order was an improper modification of the contempt order.

2. The attorney fee order is an abuse of discretion because proceedings pursuant to § 21–1–1(37), supra, were improperly initiated. The contention is that the hearing resulting in the attorney fee order was initiated by Judge M. Sanchez' order to show cause. It is asserted that under § 21–1–1(37)(a), supra, proceedings may be initiated only by an application of counsel and the judge had no authority to initiate proceedings.

It is not at all clear that this issue was raised in the trial court. We assume that it was. We do not answer this contention solely on the basis of paragraph (a) of § 21–1–1(37), supra. Instead our answer applies to all paragraphs of the rule.

Trial courts have inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. See *Beverly v. Conquistadores, Inc.,* supra. "Trial courts have supervisory control over their dockets." *Birdo v. Rodriguez,* 84 N.M. 207, 501 P.2d 195 (1972). This inherent supervisory control was Judge M. Sanchez' authority to initiate proceedings under § 21–1–1(37), supra.

3. The attorney fee award is an abuse of discretion because the award made is unauthorized. This issue involves paragraphs (a), (b) and (d) of § 21–1–1(37), supra.

Paragraph (a) authorizes attorney fees where a deponent refuses to answer

and a court order is obtained compelling an answer. The fees authorized are for those incurred in compelling answers. A part of the attorney fees awarded by Judge M. Sanchez was for an appearance before Judge Fowlie to compel answers to questions propounded during the taking of Garcia's deposition. Thompson and the City do not claim that fees could not be awarded; the claim is that only Judge Fowlie could award the fees. Judge Fowlie was not asked to rule on the question of attorney fees. The matter was presented to and ruled on by Judge M. Sanchez. We have previously held in this opinion that Judge M. Sanchez had authority to enter orders in connection with discovery. That authority extends to awarding attorney fees because of a refusal to answer questions.

█ Apart from the refusal to answer questions during the Garcia deposition, the refusal to make discovery in this case involves paragraphs (b) and (d). The refusal in this case was a willful refusal to permit discovery to proceed. This refusal was also a violation of direct orders of the court. The refusal was by Thompson, who the record shows was authorized by the City to decide whether the deponents would or would not appear for depositions. In these circumstances, paragraph (d) was applicable.

Although paragraph (d) was violated, that paragraph does not specifically authorize the award of attorney fees. Paragraph (d) does authorize the award of more drastic sanctions. Paragraph (b) authorizes sanctions for violation of specified court orders, but the orders violated in this case are not orders of the type listed in paragraph (b)(2).

The question then is whether the court can impose lesser sanctions for a violation of paragraph (d) than are specifically authorized in that paragraph. The use of the more drastic sanctions of dismissal and default judgment have been approved. See *Doanbuy Lease and Co. v. Melcher*, 83 N. M. 82, 488 P.2d 339 (1971); *Rio Grande*

*Gas Company v. Gilbert*, 83 N.M. 274, 491 P.2d 162 (1971). In this case the sanction of default judgment was available to the court. See paragraph (d). Our opinion is that the trial court is not limited to either imposing the drastic sanction of default judgment or imposing no sanctions at all. We hold that Judge M. Sanchez had authority to impose the lesser sanction of attorney fees for the violation of § 21–1–1(37)(d), supra. See the contention in *Beverly v. Conquistadores, Inc.*, supra, that lesser sanctions are favored.

█ 4. The attorney fee award has three parts. One part was the attorney fees for compelling answers before Judge Fowlie. The second part was for attorney fees actually incurred by plaintiffs because of the failure of Thompson and the City to proceed with discovery in accordance with court orders. It is not an abuse of discretion to require reimbursement of attorney fees incurred because of the failure of Thompson and the City to proceed with court ordered discovery.

The primary attack on the award of attorney fees is directed against the third part of the award. This third part awards attorney fees for the time spent in taking the depositions of four witnesses. These depositions had been directed in Judge M. Sanchez' orders. The depositions were delayed because of noncompliance with the orders. Judge M. Sanchez ruled that under the circumstances of this case it was "appropriate and just" to award attorney fees for the taking of these four depositions. Thompson and the City contend this was an abuse of discretion by Judge M. Sanchez. They assert the "legal fees for these depositions was an expense which would have been incurred by the plaintiffs' counsel irregardless [sic]. This is not compensatory, it is a windfall designed obviously with its punitive nature in mind."

█ Requiring payment of attorney fees to be incurred in the taking of depositions is a less drastic sanction than those specifically authorized in § 21–1–1(37)(d), supra. This payment was imposed because

of the circumstances of this case. The circumstances include a noncompliance with court orders. That noncompliance continued after the Supreme Court dismissed its alternative writ of superintending control. The circumstances show a sustained and deliberate disobedience of the court orders concerning discovery. Under these circumstances we cannot say that the award of attorney fees for the depositions was unfair, arbitrary, manifest error, or not justified by reason. Accordingly, it was not an abuse of discretion. See *State v. Kincheloe*, 87 N.M. 34, 528 P.2d 893 (Ct.App.1974); *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

5. Even though Judge M. Sanchez had authority to award attorney fees for violation of § 21–1–1(37)(d), supra, and the fees awarded were not an abuse of discretion, Thompson and the City assert there was an abuse of discretion because of Judge M. Sanchez' purpose in making the award. They assert the award was punitive in that the award "has provided to plaintiffs' counsel an open-ended means to finance their lawsuit", that the true intent of the judge was punishment rather than compensation to plaintiffs. This argument renews the first specific attack on the award (see 1. above) but omits the argument that the award was a modification of the contempt order.

▇▇▇▇▇ We agree the award was punitive. Why was the punishment imposed? Because there was a violation of § 21–1–1(37)(d), supra. The fact that punishment is imposed for the violation does not show an abuse of discretion because § 21–1–1(37)(d), supra, authorizes punishment for its violation. The wording of paragraph (d) answers the contention that "compensation" is the only available sanction for its violation.

The order holding Thompson in contempt and the order awarding attorney fees against Thompson and the City are affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, Judge (dissenting).

I dissent.

A. *Trial court lost jurisdiction to enter second order.*

On July 2, 1974, the trial court entered a contempt order against Assistant City Attorney James Thompson for failure to produce witnesses pursuant to proper notice and court order. It provided that Thompson could purge himself of this contempt by producing, immediately, witnesses already noticed for depositions. The order decreed that Thompson shall pay from his personal funds into the court registry before the close of business each day that the office is open the sum of $50.00 per day as long as Thompson continues with noncompliance. The court said this was a civil contempt order.

On July 30, 1974, Thompson filed a notice of appeal from this order of contempt.

On August 1, 1974, the trial court issued an order to show cause on August 9, 1974 why Thompson and/or the City should not be required to pay attorney fees and costs for failure and refusal to proceed in accordance with the court's prior orders.

On August 9, 1974, a hearing was held.

The court recognized that Thompson had appealed the contempt order.

On August 12, 1974, the court entered its order that Thompson and the City were jointly and severally liable to plaintiffs for attorney fees incurred to date and to be incurred in taking depositions of three witnesses.

Section 21–12–3(a)(4), N.M.S.A.1953 (1974 Int.Supp.) provides:

In civil actions, any party aggrieved may appeal to the appropriate appellate court within thirty days after entry of

\* \* \* \* \* \*

(4) Judgment in any proceeding for civil contempt.

The order of July 2, 1974 was final and appealable. Upon the filing of the notice

of appeal from the order, the trial court lost jurisdiction of the case, except for purposes of perfecting the appeal to this Court. *State v. Maples,* 82 N.M. 36, 474 P.2d 718 (Ct.App.1970); *State v. Clemons,* 83 N.M. 674, 496 P.2d 167 (Ct.App.1972); *Deats v. State,* 84 N.M. 405, 503 P.2d 1183 (Ct.App.1972) (Sutin, J., specially concurring).

The order of August 12, 1974 was void. *National American Life Insurance Co. v. Baxter,* 73 N.M. 94, 385 P.2d 956 (1963).

B.   *Thompson was convicted of criminal contempt, not civil contempt.*

The trial court stated that the contempt order of July 2, 1974 was civil contempt. The contempt order decreed that Thompson shall pay from his personal funds into the court registry the sum of $50.00 per day during noncompliance with the court's order. This is criminal contempt.

Thompson was not a party to the action. He was found guilty of an act in resistance of the order of the court. His case therefore comes more fully within the punitive rather than the remedial class. The fine was payable to the court registry, not to the opposing parties. This is criminal contempt because its primary purpose is punishment. Civil contempt occurs where the purpose of the proceeding is primarily compensatory or by way of reimbursement to the opposite party for expenses growing out of the alleged contempt. *Costilla Land & Investment Co. v. Allen,* 15 N.M. 528, 110 P. 847 (1910); *State v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957).

*International Min. & C. Corp. v. Local 177, U. S. & A. P. W.,* 74 N.M. 195, 392 P.2d 343 (1964) says:

The general rule is that an accused in a criminal contempt proceeding is presumed innocent until found guilty beyond a reasonable doubt by evidence introduced and a defendant in a criminal contempt proceeding cannot be compelled to testify against himself. Since a wilful disobedience of a court's order is punishable by traditional criminal proceedings and is sometimes referred to as quasi-criminal, the essential rights of the accused must be preserved and safeguarded. [Citations omitted]. [74 N.M. at 199, 392 P.2d at 346].

C.   *The order of criminal contempt is an appealable order.*

Criminal contempt is a crime in the ordinary sense. Thompson had the right to appeal from that order. *State v. Watson,* 82 N.M. 769, 487 P.2d 197 (Ct.App.1971).

D.   *Thompson was not guilty of criminal contempt.*

The record shows that the "hearing" held on July 2, 1974 was not an evidentiary hearing. Thompson was not found guilty beyond a reasonable doubt.